**Bruce Lee JORGENSEN, Plaintiff–Appellee,**

v.

**Benjamin B. CASSIDAY, III; Salvador Laurel, Defendants–Appellants.**

**Bruce Lee Jorgensen, Plaintiff–Appellant,**

v.

**Benjamin B. Cassiday, III; Salvador Laurel, Defendants–Appellees.**

Nos. 01–17458, 01–17541.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 2002.

Filed Feb. 6, 2003.

Douglas F. Cushnie, Saipan, MP, for the defendants-appellants-cross-appellees.

James J. Bickerton, Honolulu, HI, for the plaintiff-appellee-cross-appellant.

Before SCHROEDER, Chief Judge, ALARCÓN and FISHER, Circuit Judges.

## OPINION

ALARCÓN, Circuit Judge.

Benjamin B. Cassiday, III and Salvador Laurel appeal from the judgment assessing damages from the breach of an oral joint venture agreement with Bruce L. Jorgensen. Jorgensen cross-appeals.

### I

Bruce L. Jorgensen, Benjamin B. Cassiday, III, and John Perkin are members of the Hawaii bar. In May of 1996, they entered into a joint venture to locate and jointly represent heirs to the estate of Larry Hillblom. Hillblom had recently been killed in a plane crash leaving substantial assets and the possibility that heirs might be found in the Philippines or Vietnam. They agreed to divide evenly any attorney's fees they received for representing heirs to the Hillblom estate. Thereafter, Jocelyn Nonan, the mother of three potential heirs (the "Nonan children") was located in the Philippines. Acting on behalf of the Nonan children, Ms. Nonan signed a retainer agreement with Perkin, who was acting on behalf of the joint venturers.

In June 1996, while Jorgensen and Perkin were in Vietnam, searching for other heirs, Cassiday returned to the Philippines. Cassiday convinced Nonan to enter into an agreement providing that Cassiday would be the sole legal representative of her children. A Philippines court then appointed Salvador Laurel as guardian to the Nonan children. Cassiday prevented Jorgensen and Perkin from participating in their representation. Perkin and Jorgensen eventually located a potential heir from Vietnam, who asked them to represent him on April 25, 1997.

Jorgensen filed a complaint on April 15, 1999, in the United States District Court for the Northern Mariana Islands. He alleged that Cassiday had breached the joint venture agreement by surreptitiously convincing Jocelyn Nonan to substitute Cassiday as the Nonan children's sole legal representative. The district court granted Jorgensen's motion for a preliminary injunction to sequester funds to be paid to Cassiday and Laurel from a settlement they had negotiated with other claimants on behalf of the Nonan children. This preliminary injunction was vacated, on July 20, 1999, when the judge decided that Jorgensen was not likely to prevail on the merits based solely on his testimony regarding the alleged joint venture agreement.

Cassiday filed a motion asking District Judge Alex R. Munson to recuse himself on June 16, 1999. Cassiday alleged that Jorgensen had served as Judge Munson's law clerk eight years prior to the commencement of the case. He also asserted that Jorgensen had threatened to use his influence as the judge's "fishing buddy" against Cassiday. Judge Munson denied the motion on July 15, 1999.

On October 4, 2000, Jorgensen again moved for a temporary restraining order in which he requested that the court sequester the settlement funds to be paid to Cassiday and Laurel. The court granted the motion. Subsequently, the court issued a preliminary injunction.

On August 15, 2000, the district court entered its case management scheduling order (the "Case Management Order") pursuant to Federal Rule 16(b) of the Federal Rules of Civil Procedure. The Case Management Order stated, *inter alia*, that "all discovery shall be completed by March 30, 2001," and that "all discovery motions shall be filed so as to be heard on or before April 19, 2001."

On January 24, 2001, Jorgensen requested discovery of all documents relating to

the Nonan case. Cassiday and Laurel delivered five documents on June 7, 2001. On the same day, Jorgensen moved for an order to compel Cassiday and Laurel to comply fully with his January request. On June 11, 2001, the court ordered Cassiday and Laurel to produce all documents sought in the June 7, 2001 motion by June 14, 2001, and the trial date was continued to June 25, 2001. On June 19, 2001, Jorgensen moved for sanctions against Cassiday and Laurel based on their alleged failure to comply with the court's June 11, 2001 order.

On June 22, 2001, Judge Munson offered to continue commencement of the trial and not to impose sanctions, if Cassiday and Laurel would agree to produce the requested documents within one week. The court adjourned for ninety minutes to permit their attorney to contact Cassiday and Laurel in the Philippines.

Counsel for Cassiday and Laurel informed the court that the requested documents could not be produced because they were under the control of a Philippines court. Counsel stated that Cassiday did not have any copies of these documents. The district court found that Cassiday and Laurel's failure to comply with the June 11, 2001 discovery order was willful. As a sanction, the district court struck Cassiday and Laurel's answers to the complaint, and entered a default. As an additional sanction, the court instructed the jury it was an established fact that the joint venture existed, and that Cassiday had breached it by representing the Nonan children exclusively and by refusing to honor the agreement to pay one-third of the Nonan fees to Jorgensen. The jury was instructed that their duty was to determine the amount of damages, if any, that should be awarded to Jorgensen.

Cassiday testified that he had received $1.5 million in attorney's fees from settling the claims of the Nonan children against the Hillblom estate. The district court instructed the jury that Cassiday had also received a $250,000 "leveler" payment for services performed for the Nonan children before the ultimate settlement and that Jorgensen, acting as a member of the joint venture, had rendered some of the services that resulted in that payment. The district court also instructed the jury that the joint venture agreement entitled Jorgensen to "be compensated ... by receiving one-third of all fees or payments generated from the representation of Hillblom heir claimants from the Philippines or Vietnam who retained Cassiday, Jorgensen or Perkin ... as their counsel." The jury returned a verdict for Jorgensen of $83,333.

## II

■ Cassiday and Laurel contend that the district court judge erred by refusing to recuse himself because Jorgensen served as his law clerk from 1989 through January 1991. Further, they allege that Jorgensen threatened to use his influence to guarantee a judgment in his favor and Judge Munson revealed his bias by granting Jorgensen's second motion for a preliminary injunction. We review the denial of a recusal motion for abuse of discretion. *Moideen v. Gillespie*, 55 F.3d 1478, 1482 (9th Cir.1995). "Any ... judge ... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Where the outcome of a proceeding depends on the credibility of an acquaintance of the district court judge, the concern over the appearance of impartiality is heightened. *See Moran v. Clarke*, 296 F.3d 638, 649 (8th Cir.2002) (holding that the district court should more carefully consider recusal issue on remand where the judge had been a social acquaintance of one of the defendants for twenty-one years).

■ We are mindful that there are relatively few federal court litigators in the Commonwealth of the Northern Mariana Islands ("Commonwealth"). Judge Munson is the only federal district court judge in the Commonwealth. It is quite likely that Judge Munson is acquainted with most of the lawyers who regularly appear in his court.

Jorgensen ceased serving as Judge Munson's law clerk eight years before this case was filed. He now resides and practices in Hawaii. The record shows that Jorgensen went fishing with Judge Munson and a number of other persons on one occasion during Jorgensen's clerkship.

Cassiday and Laurel contend that the evidence of Jorgensen's threat that Judge Munson "would make certain that things would go badly for Cassiday in Saipan" demonstrates that Judge Munson should have recused himself. This evidence speaks only to the conduct and statements of Jorgensen rather than to Judge Munson's possible bias. *See Hodgson v. Liquor Salesmen's Union, Local No. 2,* 444 F.2d 1344, 1349 (2nd Cir.1971) (affirming denial of recusal where affidavit in support of recusal motion was based almost entirely on statements by opposing counsel suggesting influence with trial judge). We note also that Judge Munson ruled in favor of Cassiday and Laurel in denying Jorgensen's motions for judgment as a matter of law and for a new trial. Cassiday and Laurel have failed to demonstrate that Judge Munson abused his discretion in denying the recusal motion.

## III

Cassiday and Laurel contend that the district court abused its discretion in imposing sanctions against them because the requested documents were in the possession of a Philippines guardianship court and could not be released without its approval. They argue that because this failure to produce the documents was due to circumstances beyond their control, the sanction violated their due process rights.

■ We review a district court's imposition of sanctions for abuse of discretion. *Fair Hous. of Marin v. Combs,* 285 F.3d 899, 905 (9th Cir.2002). Where the sanction results in default, the sanctioned party's violations must be due to the "willfulness, bad faith, or fault" of the party. *Hyde & Drath v. Baker,* 24 F.3d 1162, 1167 (9th Cir.1994) (citing *Fjelstad v. Am. Honda Motor Co.,* 762 F.2d 1334, 1341 (9th Cir.1985)). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Hyde & Drath,* 24 F.3d at 1166. We review a finding of such conduct under the clearly erroneous standard. *Valley Eng'rs Inc. v. Elec. Eng'g Co.,* 158 F.3d 1051, 1054 (9th Cir. 1998).

■ Laurel did not present evidence that he attempted to obtain the Nonan file from the Philippines court. He did not demonstrate that production from that court would be impossible, or that production of the documents would subject him to civil or criminal sanctions. He argues that the district court should have filed a request with the Philippines court for an inspection of the Nonan file. "[A] court does not abuse its discretion to sanction when it does not make [discovery] as easy as possible for [a] party [from whom discovery is sought]." *Hyde & Drath,* 24 F.3d at 1167. The district court did not abuse its discretion in imposing a sanction against Laurel.

Cassiday served as Laurel's counsel in the Nonan case. That case settled after the commencement of the present action. Thus, it was reasonable for the district court to infer that Cassiday could have produced copies of the documents requested by Jorgensen. The district court did not clearly err in finding that Cassiday and

Laurel acted with willfulness, bad faith or fault in failing to produce the Nonan file.

■ Cassiday and Laurel next argue, without citation to authority, that the district court abused its discretion because the motion to compel was filed after the deadline for discovery motions established in the Case Management Order.

■ "The district court is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order ... will not be disturbed unless they evidence a clear abuse of discretion." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir.1992) (citing *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir. 1985) (internal quotation marks omitted)).

The Case Management Order required that all discovery be concluded by March 30, 2001. Jorgensen first submitted his request for discovery of the documents four months before this deadline. Cassiday and Laurel did not respond to the request for documents until June 7, 2001. They did so in a manner that the district court found inadequate. This tardiness was a violation of the district court's mandate that discovery be concluded by March 30. Jorgensen's motion to compel correctly called on the district court to enforce its earlier order. The district court did not abuse its discretion by granting the motion to compel.

The district court carefully and explicitly considered its decision to impose sanctions and was willing to forego sanctioning Cassiday and Laurel if they would merely commit to producing the requested documents. Cassiday and Laurel had been on notice for approximately six months that

these documents were requested. The district court did not abuse its discretion in striking Cassiday and Laurel's answers.

## IV

■ Cassiday challenges the validity of the joint venture agreement and argues that Commonwealth law should control this issue. Jorgensen urges that we apply Hawaii law.

■ We review the district court's choice of law de novo. *Torre v. Brickey*, 278 F.3d 917, 919 (9th Cir.2002). A federal court sitting in diversity must apply the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Orr v. Bank of Am.*, 285 F.3d 764, 772 n. 4 (9th Cir.2002). "In the absence of statutory or customary law [the Commonwealth] applies the common law as expressed in the Restatements." *Castro v. Hotel Nikko Saipan*, 4 N. Mar. I. 268, 272 n. 5 (1995) (citing 7 C.M.C. § 3401). The Commonwealth has no statute addressing choice of law and the parties have not alleged the existence of any applicable customary law.

In the absence of a contractual agreement to the contrary, the Restatement directs that, "[t]he validity of a contract for the rendition of services ... [is] determined ... by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered...." Restatement (Second) of Conflicts § 196. Consistent with the Restatement's goal of applying the law of the state with the "most significant contacts," the Restatement excepts situations where "some other state has a more significant relationship under the principles stated in § 6[1] to the transaction and the parties, in

---

1. Finding the state with the most significant relationship requires application of § 6, which urges courts to reach a conclusion that respects:
 (a) the needs of the interstate ... system[ ],

(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

which event the local law of the other state will be applied." *Id.*

Here, all of the parties to the joint venture agreement were licensed to practice in Hawaii. The parties agreed to enter into a joint venture in Hawaii. The joint venture agreement provided that their services would be performed in Hawaii, the Commonwealth, the Philippines and Vietnam. Hawaii had a strong interest in regulating the conduct of the joint venturers. They are members of the Hawaii bar and Perkin was to remain in Honolulu, coordinating administrative aspects of the joint venture and performing a significant amount of substantive legal work. *See Perez v. Alcoa Fujikura, Ltd.,* 969 F.Supp. 991, 1003–05 (W.D.Tex.1997) (holding that Texas law governed international contract dispute, despite the fact that Mexico was the place of performance, because it was signed and negotiated in part in Texas, the parties would have likely expected the application of Texas law and Texas had a strong interest in regulating its residents and their employment activities).

Although the Commonwealth probated the Hillblom estate, and had an interest in its just and equitable distribution, the state with the most significant contacts to this dispute is Hawaii. Where such an agreement to do work around the world is negotiated in Hawaii, between Hawaii lawyers and breached before performance, the parties' expectations are best protected by applying Hawaii law. *Id.* Thus, under the Restatement, Hawaii law controls.

> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.
> In applying the principles of § 6, the court should consider the following contacts according to their relative importance to the particular issue in question:

## V

Cassiday and Laurel argue that the joint venture agreement is unenforceable as a matter of Hawaii public policy because it contemplated violations of Rules 1.5 and 1.7 of Hawaii's Rules of Professional Conduct. They argue that as a result, the district court's determination of Cassiday's and Laurel's liability, which was premised on the enforceability of the agreement, was in error.

A district court's interpretation of state contract law is reviewed de novo. *Salve Regina Coll. v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). In Hawaii, "a court may refuse to enforce contracts that violate ... public policy." *Inlandboatmen's Union of the Pacific, Hawai'i Region v. Sause Bros.,* 77 Hawai'i 187, 881 P.2d 1255, 1262 (1994). The Hawaii Supreme Court has not passed on the question of whether a contract that violates the Hawaii Rules of Professional Conduct also violates Hawaii public policy. We need not answer this question, however, because Cassiday and Laurel have failed to establish that enforcing the agreement would violate either Rule 1.5 or Rule 1.7.

Hawaii Rule of Professional Conduct 1.5 states in relevant part:

> (e) A division of fees between lawyers who are not in the same firm may be made only if:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
> Restatement (Second) of Conflicts § 188.

(1) the division is in proportion to the services performed by each lawyer and, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

(2) the client is advised of and does not object to the participation of all the lawyers involved; and

(3) the total fee is reasonable.

Cassiday and Laurel argue that enforcing the joint venture would violate Rule 1.5 because the joint venture was oral rather than written, the guardian of the Nonan children was not informed of and did not consent to the participation of Jorgensen, and Jorgensen did not in fact perform any services on behalf of the Nonan children. We disagree.

 Hawaii recognizes the validity of joint ventures and applies partnership principles in analyzing them. HRS § 425–106(1). Under Hawaii law, a joint venture may be validly created by oral agreement. *Shinn v. Edwin Yee, Ltd.*, 57 Haw. 215, 553 P.2d 733, 736–37 (1976). Cassiday and Laurel appear to argue that Rule 1.5 requires that joint ventures between attorneys be in writing. By its term, however, Rule 1.5 requires that attorneys have a written agreement *with their jointly represented client(s)*, not among themselves.

Enforcing the agreement does not violate Rule 1.5 because Cassiday breached the agreement before any violation could have occurred. The joint venture agreement contemplated an equal division of fees generated through the efforts of the joint venture. It is unclear whether the joint venture also contemplated that each participant would perform an equal share of the work, so that the fees earned by each would be in proportion to the work actually performed by each, as required by Rule 1.5. Given this ambiguity, we cannot conclude that the joint venture by its terms violated Rule 1.5. Thus we turn to the question whether the performance of the joint venture violated Rule 1.5. Cassiday, Jorgensen and Perkin were present when Jocelyn Nonan agreed to representation by the joint venturers. Cassiday, however, surreptitiously took the Nonan case as his alone one week later. He thereby prevented the joint venture from going forward, and thus made it impossible to determine whether performance of the joint venture would have violated Rule 1.5. Cassiday and Laurel have not shown that the performance of the joint venture *necessarily* would have violated Rule 1.5. If Cassiday had not breached, it is possible that, ultimately, the fees would have been split in proportion to the amount of work done by each attorney. Cassiday and Laurel cannot now rely on Cassiday's breach to maintain the unenforceability of the agreement. *Kahili, Inc. v. Yamamoto*, 54 Haw. 267, 506 P.2d 9, 12 (1973) ("If a promisor, without legal excuse, prevents the happening of an event upon which his liability depends, he cannot thus be allowed to defeat the promise.").

 Hawaii's Rule of Professional Conduct 1.7 states in relevant part:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

Cassiday and Laurel argue that enforcing the joint venture agreement would violate Hawaii's Rule of Professional Conduct 1.7 because the interests of the Vietnamese and Philippine claimants were directly adverse, and the claimants did not consent. The claimants' interests were necessarily adverse, Cassiday and Laurel argue, be-

cause the Hillblom estate was a finite amount of money. Again, we disagree.

Cassiday breached the joint venture agreement well before the joint venture had an opportunity to secure consent from all clients or assess the risk of an actual conflict. The joint venture agreement did not by its terms violate Rule 1.7, and Cassiday's breach makes it impossible to determine whether any violation of Rule 1.7 necessarily would have occurred during the course of performance. Again, Cassiday and Laurel cannot now rely on Cassiday's breach to maintain the unenforceability of the agreement. *Kahili,* 506 P.2d at 12.

We hold that the joint venture is enforceable under Hawaii law and that the district court did not err in reaching the same conclusion.

## VI

 At the conclusion of the trial, Jorgensen moved for judgment as a matter of law, pursuant to Fed.R.Civ.P. 50(a), and for a new trial, pursuant to Fed.R.Civ.P. 59(a). Jorgensen argued that the jury failed to follow the court's instructions by declining to award him one-third of the $1.5 million fee paid to Cassiday for his services representing the Nonan children. He noted that the jury was instructed that the agreement contemplated "that Jorgensen would be compensated for his participation in the joint venture by receiving one-third of all fees or payments generated from the representation of Hillblom heir claimants from the Philippines or Vietnam who retained Cassiday, Jorgensen or Perkin." In denying these motions, the district court explained:

> The evidence showed that defendant Cassiday ultimately received $1.5 million for his representation of the Filipino claimants and that plaintiff Jorgensen received approximately $1.5 million as attorney's fees for his representation of

the Vietnamese claimants, and that neither had honored the joint venture agreement by splitting their respective fees with the other, because they did not work, or were prevented by each other from working, on behalf of each other's claimants. The simplest explanation for the verdict, and one that is consistent with the evidence as presented and determined by the jury . . . is that the jury concluded that plaintiff was entitled only to a one-third share of the $250,000 "leveler" payment . . . and that otherwise both plaintiff and defendants were to be left *in status quo.* . . . [A] reasonable jury could have determined, as this jury did, that neither party honored the oral joint venture agreement and that the $1.5 million attorney's fees awarded to defendant Cassiday and plaintiff for their representation of the Filipino and Vietnamese clients, respectively, canceled each other out. . . .

In his cross-appeal, Jorgensen seeks reversal of the denial of his post-trial motions. Jorgensen maintains that the district court erred in concluding that he received $1.5 million for his representation of the Vietnam claimant, or that he breached the joint venture agreement. He also argues that the district court's explanation of the verdict is only possible if the jury ignored the jury instructions and found that Jorgensen breached the joint venture agreement. Cassiday and Laurel maintain that the joint venture agreement was to include representation of heir claimants in the Philippines and Vietnam. They contend that "Jorgensen did not transfer any funds from the Vietnam representation, so why would Cassiday be compelled to transfer fees from the Philippine representation. . . . [B]oth sides breached and the jury held them to that."

### A.

 We review the denial of a motion for judgment as a matter of law de novo.

*Janes v. Wal–Mart Stores, Inc.,* 279 F.3d 883, 886 (9th Cir.2002). A district court can overturn a jury's verdict and grant a Rule 50(a) motion only if "a party has been fully heard on an issue and there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting Fed.R.Civ.P. 50(a) (internal quotation marks omitted)).

The jury instructions admonished the jury that the following facts were true: "Cassiday ... breached and entirely repudiated the joint venture agreement;" the joint venture agreement provided that "Jorgensen would be compensated for his participation in the joint venture by receiving one-third of all fees or payments generated from the representation of Hillblom heir claimants from the Philippines or Vietnam who retained Cassiday, Jorgensen, or Perkin ... as their counsel;" Cassiday's conduct was "a breach of Cassiday's contractual obligation to Jorgensen;" Cassiday "prevented Jorgensen from performing certain aspects of the joint venture agreement while knowingly permitting Jorgensen to perform some of his undertakings;" "[i]n May 1997, Jorgensen learned that Cassiday, without ... disclosure to Jorgensen, had repudiated the joint venture agreement...." "Cassiday has become a payee [under the Nonan children's settlement] with the purported right to receive all of the monies payable thereunder which otherwise would have been payable to Jorgensen, to wit, one-third of the attorneys' fees payable...." The special verdict form then instructed the jury to consider:

1) Did plaintiff Jorgensen sustain damages as a result of the breaches of defendant Cassiday?

2) State the amount of economic damages, if any, awarded to plaintiff Jorgensen as a result of the breaches of defendant Cassiday.

3) State the amount of non-economic damages, if any, awarded to plaintiff Jorgensen as a result of the breaches of defendant Cassiday?

4) Should punitive damages be awarded against defendant Cassiday?

These same four questions were repeated, with slight variation, with respect to Laurel. The district court left no other issues to the jury.

The record shows that the jury heard evidence that Jorgensen represented a Vietnamese claimant to a share of the Hillblom estate. This client later paid fees to Jorgensen. The record also demonstrates that representation of a Vietnamese heir was contemplated to be a part of the joint venture agreement. The following colloquy appears in the record of the cross-examination of Jorgensen:

Q: Well, you said in November 1996, Vo Minh Tan had surfaced and you told me in the beginning of June 1996 the Nonan children had surfaced; is this correct?

A: That's what I believe to be, although, we were—we met with people in Vietnam in June as well who told us about the prospect of the [sic] Vo Minh Tan.

Q: Okay, so maybe Vo Minh Tan, you people were aware of in June or July of 1996; is this possible?

A: Perhaps.

. . . .

Q: Okay, now are you telling me then that from June, July, August 1996, the three of you, that is, you, Mr. Cassiday, and Mr. Perkin were discussing a mutual agreement arrangement [sic] involving the [sic] Vo Minh Tan and the Nonan children together?

A: We talked about it.

. . . .

Q: And the agreement was between the three of you that there would be a one-third, one-third, one-third split on any fees earned as a result of representing, as it turns out, the Nonan children or Vo Minh Tan; is this correct?

A: Yes.

The jury could reasonably infer from these facts that on June 1, 1996, the joint venturers learned of the name of a possible Vietnamese heir. Thus, the jury could have decided that because the joint venturers located the Vietnamese client, Jorgensen also breached the joint venture agreement by not sharing the fees he received for his representation of Vo Minh Tan.

In his answer, Cassiday alleged that Jorgensen's damages should be offset or reduced by the amount he had received pursuant to the joint venture agreement. While the district court entered a default as a sanction for the discovery violations, the district court's conclusion that the jury properly considered the amount Jorgensen received against the amount owed to him by Cassiday and Laurel, in determining the amount of damages to be awarded Jorgensen, demonstrates that the court did not consider that an offset was foreclosed by the discovery sanction. In overruling one of Jorgensen's objections to a question relating to whether the joint venture agreement encompassed fees Jorgensen received from the Vietnamese client, the district court stated, "[t]his is one of the ultimate issues in this case." The jury was therefore entitled to offset Jorgensen's damages by the amount he received for representing his Vietnamese client. Therefore, the district court did not err in refusing to enter judgment as a matter of law.

**B.**

■ We review the district court's denial of a motion for new trial pursuant to Fed.R.Civ.P. 59(a) for abuse of discretion. *Janes v. Wal–Mart Stores, Inc.,* 279 F.3d at 886. "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *McDowell v. Calderon,* 197 F.3d 1253, 1255 n. 1 (9th Cir.1999). The jury did not disobey the district court's instructions and did not return a verdict that is unreasonable or unfair. The district court did not abuse its discretion in denying the motion for a new trial.

**VII**

■ In his cross-appeal, Jorgensen contends that Hawaii Revised Statute ("HRS") § 607–14 entitles him to attorney's fees because he prevailed at trial. The court denied his request for attorney's fees on the grounds that both parties had exhibited "uncommon rancor" throughout the litigation. We review the district court's interpretation and application of a state statute governing the award of attorney's fees de novo. *Kona Enters. v. Estate of Bishop,* 229 F.3d 877, 883 (9th Cir.2000).

> HRS § 607–14 states, in relevant part: [I]n all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party ... a fee [not to exceed 25%] that the court determines to be reasonable....

HRS § 607–14.[2]

■ The award of reasonable attorneys' fees for actions "in the nature of

---

**2.** It is unclear whether the Commonwealth's choice of law rules would mandate the application of HRS § 607–14 here. *See Kona Enters.,* 229 F.3d at 883 (holding that a federal court sitting in diversity applies the law of the forum state regarding an award of attorney's fees). The parties and the district court pro-

assumpsit" under HRS § 607–14 is mandatory. *Finley v. Home Ins. Co.*, 90 Hawai=i 25, 975 P.2d 1145, 1158 (1998). "Assumpsit is a common law form of action which allows for the recovery of damages for the nonperformance of a contract, either express or implied, written or verbal, as well as quasi-contractual obligations." *Schulz v. Honsador Inc.*, 67 Haw. 433, 690 P.2d 279, 281 (1984). "When there is a doubt as to whether the action is in assumpsit or tort, there is a presumption that the suit is in assumpsit." *Leslie v. Estate of Tavares*, 93 Hawai=i 1, 994 P.2d 1047, 1052 (2000) (citing *Healy–Tibbitts Constr. Co. v. Hawaiian Indep. Refinery, Inc.*, 673 F.2d 284, 286 (9th Cir.1982)). "The presumption in favor of assumpsit is strengthened when the plaintiff has prayed for attorney's fees in his original complaint." *Id.* Under Hawaii's law, we review the issue of whether Jorgensen's action sounds in assumpsit de novo. *In re Complaint of McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc). Jorgensen requested attorney's fees in his first complaint. The complaint sought damages for breach of contract and pled facts that gave rise to breach of contract issues. He is presumptively entitled to attorney's fees pursuant to HRS § 607–14.

While the trial court has broad discretion as to the reasonableness of fees, HRS § 607–14 requires that fees be awarded to the prevailing party. The district court erred in denying Jorgensen's request for attorney's fees. Upon remand, the district court shall determine the fees Jorgensen reasonably incurred. In making this determination, the district court "must base its award of fees, if practicable, on an apportionment of the fees claimed between assumpsit and non-assumpsit claims."

ceeded on the assumption that it does and Cassiday and Laurel do not contend that this

*TSA Intern. Ltd. v. Shimizu Corp.*, 92 Hawai=i 243, 990 P.2d 713, 734 (1999).

## VIII

■ Cassiday and Laurel argue that the district court acted improperly by failing to require a security bond from Jorgensen when the district court entered the preliminary injunction. Further, they argue that since final judgment was entered by the district court, the injunction must now be vacated.

■ We have recognized that Rule 65(c) invests the district court "with discretion as to the amount of security required, *if any.*" *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir.1999) (citing *Doctor's Assoc., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir.1996)). The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct. *Barahona–Gomez*, 167 F.3d at 1237.

The district court found that no "meaningful inconvenience would be visited upon any party by retaining the sums under its control pending the final outcome of this lawsuit." At all times, this money has been held in an interest-bearing account. Cassiday and Laurel argue without specificity that the Nonan children are harmed by the court's sequestration. The total settlement the Nonan children received from the Hillblom Estate is approximately $4.5 million, from which the sum of $594,444.44 (plus accumulated interest) is sequestered. Without a showing that some harm is more likely absent the posting of a security bond, we cannot say that the district court clearly abused its discre-

was error.

tion by not ordering a bond. *Barahona–Gomez v. Reno,* 167 F.3d at 1237.

Finally, the district court's preliminary injunction stated that the sequestered funds would remain with the court pending "the final outcome of this proceeding." The court clearly intended to include all stages of litigation. Otherwise, it would have released the funds at the conclusion of post-trial motions. It is not unprecedented for a preliminary injunction to survive the conclusion of the suit at trial level. *See Hodgson v. Minnesota,* 497 U.S. 417, 430, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (noting that preliminary injunction issued by district court still remained in effect when the Supreme Court entered its final judgment).

Each party shall bear its own costs on appeal.

AFFIRMED in part; VACATED in part.