321 F.3d 878
 CONNECTICUT GENERAL LIFE INSURANCE COMPANY; Equitable Life Assurance; Cigna Employee Benefits Services Inc.; Aetna U.S. Healthcare, Inc.; United Healthcare Corporation; Humana Inc.; Aetna Life Insurance Company, Plaintiffs-Appellees,
v.
NEW IMAGES OF BEVERLY HILLS, et al., Defendants, and
Haya ZILKA, Defendant-Appellant.
 No. 02-55883.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted February 11, 2003.
 Filed March 3, 2003.
 
 Joel R. Bennett, Bennett & Fairshter, Pasadena, CA, for Defendant-Appellant.
 Lawrence C. Fox (argued), Marvin Wexler (briefed), Kornstein, Veisz, Wexler & Pollard, LLP, New York, NY, for Plaintiffs-Appellees. Eve Triffo, Hennelly & Grossfeld LLP, Pacific Palisades, CA, on the brief.
 Appeal from the United States District Court for the Central District of California; Terry J. Hatter, Jr., District Judge, Presiding. D.C. No. CV-99-08197-TJH.
 Before: B. FLETCHER and HAWKINS, Circuit Judges, and BURY,* District Judge.
 OPINION
 MICHAEL DALY HAWKINS, Circuit Judge.
 
 
 1
 Defendant Haya Zilka appeals from the district court's grant of a preliminary injunction freezing her assets. She attacks the injunction on a variety of grounds, many of which were never presented to the district court. All are without merit and we affirm.
 
 
 2
 The background of this case is long and colorful. Plaintiffs — branches of four major medical insurance companies — filed a complaint in 1999 against dozens of individuals involved in an alleged insurance fraud scheme at ten outpatient surgery clinics in Southern California. The alleged scheme involved surgeons who would perform elective cosmetic surgeries and then submit fraudulent bills and medical records to plaintiffs, assigning bogus diagnoses and misrepresenting the surgeries performed. For example, various facial cosmetic surgeries were documented and billed as procedures to correct deviated septums; breast implants were billed as biopsies; tummy tucks became hernia or gynecological surgeries. The fraud was aided by patient recruiters who sought patients, primarily Asian-American women, from all over the country and were paid a fee per patient.
 
 
 3
 Haya's now ex-husband Ezeckiel Zilka was a surgeon at several of the clinics during the time these fraudulent acts occurred. Plaintiffs obtained a judgment of over five million dollars against Ezeckiel on two RICO claims. Plaintiffs then attempted to determine Ezeckiel's assets to enforce their judgment against him, and served discovery on him, his wife Haya and their son. The Zilkas resisted discovery and defied various court orders, which eventually led the district court to find them in contempt and to incarcerate Haya and Ezeckiel. We affirmed their incarceration for civil contempt in January, 2002.
 
 
 4
 Shortly thereafter, plaintiffs amended their complaint to add Haya Zilka and her company DAS International ("DAS") as defendants, alleging that she was involved in the fraud scheme as a patient recruiter. The complaint alleged that DAS received 29 checks from the Westwood Clinic (one of the hotbeds of the insurance fraud) as payments for patient recruiting, totaling more than $260,000.
 
 
 5
 Plaintiffs then sought a temporary restraining order and preliminary injunction against Haya to freeze her assets and prevent her from making material asset transfers. Plaintiffs cited previous intra-family transfers that appeared to be for the purpose of frustrating creditors. These transfers included the purchase of the Zilkas' Beverly Hills mansion in their son's name and the sale of the Pacific Wilshire Surgery Center to Haya's company for only $20,000. Plaintiffs also pointed out that the Zilkas filed for divorce shortly after the district court issued its order compelling discovery, and that the divorce settlement purports to vest all the family's significant assets with Haya.
 
 
 6
 In support of their allegations against Haya, plaintiffs submitted declarations from two insiders who testified that Haya was a patient recruiter. Plaintiffs also submitted the checks from Westwood to DAS for $261,000, and the checks from DAS to "sub-recruiters," most in standard per-patient multiples of $1500, $1600 or $1700. In her opposition, Haya did not submit a declaration explaining the checks, but asserted that the checks by themselves did not prove she was a recruiter. She also argued that the insider declarations were inadmissible because they were not based on first-hand knowledge.[1]
 
 
 7
 Judge Letts granted plaintiffs' motion to amend their complaint, granted the temporary restraining order, and issued an order to show cause why an injunction imposing similar restraints should not issue. The restraining order precluded Haya from transferring any assets without consent, except for payment of expenses in the ordinary course of living and business expenses not exceeding $2500 per month. Shortly thereafter, Judge Letts recused himself voluntarily after Haya's counsel filed a scathing declaration criticizing the judge.[2] Judge Terry Hatter then took over the case. In May 2002, Judge Hatter granted the preliminary injunction, finding that the Zilkas had previously engaged in misconduct and attempts to conceal assets and that it was probable Zilka would engage in similar and additional misconduct in the future.
 
 A. Preliminary Injunction Standard
 
 8
 A preliminary injunction should be vacated "only if the district court abused its discretion by basing its decision on an erroneous legal standard or on clearly erroneous factual findings." FTC v. Affordable Media, LLC, 179 F.3d 1228, 1233 (9th Cir.1999). To obtain a preliminary injunction, a party must make a clear showing of either (1) a combination of probable success on the merits and a possibility of irreparable injury, or (2) that its claims raise serious questions as to the merits and that the balance of hardships tips in its favor. F.D.I.C. v. Garner, 125 F.3d 1272, 1277 (9th Cir.1997).
 
 
 9
 Haya asserts that plaintiffs have not shown a likelihood that they will succeed on the merits. Plaintiffs, however, presented fairly significant evidence of Haya's involvement in the fraudulent scheme, including that her acts were sufficiently related to the other illegal acts, were over a sufficient period of time, and that she was a substantial participant. See Howard v. America Online, Inc., 208 F.3d 741, 746 (9th Cir.2000) (discussing requirements of RICO claim). Moreover, while attacking the merits of plaintiffs' RICO claim, Haya ignores the viability of plaintiffs' claims under the Unfair Competition Act and for unjust enrichment. Furthermore, Haya has provided no legitimate explanation for the money she received from the corrupt clinics. On these facts, the district court could have easily concluded plaintiffs have a probability of success on the merits of their claims.
 
 
 10
 Haya also claims that plaintiffs did not bear their burden of establishing the possibility of irreparable injury or that the balance of hardships tipped in their favor. The district court, however, expressly found that it was not only possible, but probable that Haya would engage in misconduct to conceal or dissipate assets. This finding was not clearly erroneous in light of the Zilka family's history of fraudulent intra-family transfers, their refusal to disclose asset information in defiance of court order and their convenient divorce settlement.
 
 
 11
 Haya also contends that the delay in adding her as a defendant is evidence that no irreparable injury would occur. Plaintiffs had known of Haya's activities as a patient recruiter since some time in 2000, but did not add her to the complaint until January 2002. However, the irreparable injury that forms the basis of the injunction did not stem from Haya's activities as a patient recruiter; rather, it was the more recent discovery of the Zilkas' divorce and suspect property settlement in December 2001 that led to adding Haya as a defendant and seeking the injunction. Thus, plaintiffs actually acted promptly to attempt to avoid the harm of dissipating assets.
 
 
 12
 Haya contends it was error for the court to consider her prior contempt as a basis for granting the injunction, especially since in the same order the court vacated the contempt order and released Haya from incarceration. However, her prior contempt — which involved concealment of asset information from discovery — is extremely relevant to the concern that Haya might conceal or dissipate assets. In any event, the prior contempt was only one of many factors the court considered; even if improper, the remaining considerations suffice to support the court's decision.[3]
 
 
 13
 In sum, the district court did not abuse its discretion by determining that plaintiffs had demonstrated a probability of success on the merits and a possibility of irreparable injury if the injunction did not issue. Garner, 125 F.3d at 1277. It was therefore appropriate for the court to grant plaintiffs' request for a preliminary injunction.
 
 B. Authority to Enter the Injunction
 
 14
 In addition to asserting that it was error for the court to enter the injunction, Haya contends that the court lacked the equitable authority to do so, because the "true gravamen" of the complaint is for money damages, even though the complaint admittedly also contains claims for equitable relief. This issue is raised for the first time on appeal, and we therefore treat the issue as waived. In re Am. West Airlines, 217 F.3d 1161, 1165 (9th Cir. 2000) (absent exceptional circumstances, arguments raised for the first time on appeal are not considered).[4]
 
 C. Failure to Require a Bond
 
 15
 Haya contends that the district court also erred because it failed to require plaintiffs to post a bond in connection with the injunction.[5] Haya did not, however, ask the court to set a bond or submit any evidence as to what damages she might incur as a result of the injunction.
 
 
 16
 The district court is afforded wide discretion in setting the amount of the bond, Walczak v. EPL Prolong, Inc., 198 F.3d 725, 733 (9th Cir.1999), and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction. Gorbach v. Reno, 219 F.3d 1087, 1092 (9th Cir.2000). Because Haya failed to request a bond or submit any evidence regarding her likely damages, we will not entertain this argument for the first time on appeal. See Aoude v. Mobil Oil Corp., 862 F.2d 890, 896 (1st Cir.1988) (refusing to hear argument regarding the need for bond because the district court had not been requested to set a bond); Clarkson Co. v. Shaheen, 544 F.2d 624, 632 (2d Cir.1976) (finding judge could dispense with bond requirement because no request for a bond was ever made in district court).
 
 
 17
 We recognize that some other circuits have held that a motion to set bond is not required to preserve the issue for appeal. See, e.g., Coquina Oil Corp. v. Transwestern Pipeline Co., 825 F.2d 1461, 1462 (10th Cir.1987). We do not, however, believe that the language of Rule 65(c) absolves the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond. Without such evidence before it, the district court did not abuse its discretion by not reaching the bond issue. See Gorbach, 219 F.3d at 1092.
 
 D. Scope of Injunction
 
 18
 Haya also contends that the scope of the injunction is overly broad because it affects all her assets, as opposed to specific assets that were fraudulently obtained. This issue is also raised for the first time on appeal, and we cannot entertain the argument because further factual development would be required in order to determine which, if any, of Haya's assets might not be appropriately available as equitable relief. See In re Am. West Airlines, 217 F.3d at 1165. Haya, however, remains free to petition the district court to modify the injunction. See, e.g., Federal Sav. & Loan. Ins. Corp. v. Dixon, 835 F.2d 554, 565 (5th Cir.1987) (noting that defendants could attempt to prove in district court that certain assets they possess were acquired "at a time or through such means that there is no likelihood that they were acquired" from fraudulent practices and thus obtain a release from an asset-freezing injunction).
 
 
 19
 Similarly, Haya contends that the term "asset" as used in the injunction is impermissibly vague and ambiguous. This complaint was also never made to the district court and, as with the scope issue, the proper approach would be for Haya to seek a modification or clarification of the injunction from the district court. See Commodity Futures Trading Comm'n v. Co Petro Mktg. Group, Inc., 700 F.2d 1279, 1285 (9th Cir.1983) (noting that if there is a question about the terms of an injunction, attorney should attempt to clarify with the court).
 
 CONCLUSION
 
 20
 Because plaintiffs demonstrated a likelihood of success on the merits and a possibility of irreparable injury, the district court did not abuse its discretion by entering an asset-freezing injunction against Haya Zilka. Haya has waived her argument that the district court lacked the equitable authority to enter the injunction and that the court erred by failing to require a bond. She remains free to petition the district court to require a bond, modify the scope of the injunction, or clarify the meaning of the injunction, but we cannot address these arguments for the first time on appeal. The grant of the injunction is AFFIRMED.
 
 
 
 Notes:
 
 
 *
 Honorable David C. Bury, United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 The declarations were admissible — they specifically describe acquiring knowledge of Haya's recruiting from Haya herself
 
 
 [2]
 In the recusal order, Judge Letts noted that the "declaration appears to be an exercise in forum shopping through the means of `judge baiting' accompanied by threats, done with a view either to influencing the judge's future conduct in the case or causing him to recuse himself."
 
 
 [3]
 Haya also argues in her brief that the district court must give full faith and credit to the divorce decree she and Ezeckiel entered into during the lawsuit. This argument is not relevant to the issues before this court; there is no suggestion of how the divorce decree impacts the injunction, and plaintiffs are not in this proceeding attempting to reach those assets as community property
 
 
 [4]
 Moreover, even if we were to reach the issue, we would find it meritlessSee United States ex rel. Rahman v. Oncology Associates, 198 F.3d 489, 494-99 (4th Cir.1999) (district court has authority to issue asset-freezing injunction where equitable relief is sought, even though substantial money damages are also claimed).
 
 
 [5]
 Federal Rule of Civil Procedure 65(c) provides that:
 No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to be wrongfully enjoined or restrained.