# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CONNECTICUT GENERAL LIFE
INSURANCE COMPANY; EQUITABLE
LIFE ASSURANCE SOCIETY OF THE
UNITED STATES; CIGNA EMPLOYEE
BENEFITS SERVICES INC.; AETNA
U.S. HEALTHCARE, INC.; UNITED
HEALTHCARE CORPORATION, fka
United HealthGroup Incorporated
dba UnitedHealth Group; HUMANA,
INC.; AETNA LIFE INSURANCE
COMPANY,
                    *Plaintiffs-Appellees,*

          v.

NEW IMAGES OF BEVERLY HILLS,
                    *Defendant,*

          and

PROVIDENCE AMBULATORY SURGERY
CENTER, INC., dba Providence
Ambulatory Surgery Center;
HARRELL ROBINSON, M.D.,
                    *Defendants-Appellants.*

No. 04-55859

D.C. No.
CV-99-08197-TJH

OPINION

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Chief District Judge,
and J. Spencer Letts, District Judge, Presiding

Submitted May 3, 2006
Pasadena, California

Filed March 30, 2007

3683

Before: Diarmuid F. O'Scannlain,* Andrew J. Kleinfeld, and
Barry G. Silverman, Circuit Judges.

Opinion by Judge Kleinfeld

---

*This case was submitted on May 3, 2006, before Judge Lay, Judge
Kleinfeld, and Judge Silverman. Judge Lay became unavailable while the
decision was pending, and Judge O'Scannlain was drawn to replace him
pursuant to General Order 3.2(g). Judge O'Scannlain has read the briefs
and reviewed the record.

## COUNSEL

Roy C. Dickson (briefed), Dickson & Associates, Yorba Linda, California, for the appellants.

Lawrence C. Fox (briefed), Kornstein, Veisz, Wexler & Pollard, LLP, New York, New York, for the appellees.

## OPINION

KLEINFELD, Circuit Judge:

The only issue raised in this case is the appropriateness of a discovery sanction that terminated the case and imposed judgment.

### Facts

Harrell Robinson, M.D., and Providence Ambulatory Surgery Center, Inc. were part of a huge, lucrative, fraudulent scheme to solicit patients, perform surgeries, and submit fraudulent billings to insurance companies. We described the scheme in a related appeal:

> The background of this case is long and colorful. Plaintiffs — branches of four major medical insurance companies — filed a complaint in 1999 against dozens of individuals involved in an alleged insurance fraud scheme at ten outpatient surgery clinics in Southern California. The alleged scheme involved surgeons who would perform elective cosmetic surgeries and then submit fraudulent bills and medical records to plaintiffs, assigning bogus diagnoses and misrepresenting the surgeries performed. For example, various facial cosmetic surgeries were documented and billed as procedures to correct deviated septums; breast implants were billed as biopsies; tummy tucks became hernia or gynecological surgeries. The fraud was aided by patient recruiters who sought patients, primarily Asian-American women, from all over the country and were paid a fee per patient.[1]

---

[1] *Connecticut General Life Insurance Company v. New Images of Beverly Hills*, 321 F.3d 878, 879-80 (9th Cir. 2003);. *See also Robinson v. Cigna Employee Benefits Services*, No. 01-55868, 36 Fed. Appx. 329 (9th Cir. June 7, 2002); *Connecticut General Life Insurance Company v. Zilka*, No. 03-56237, 108 Fed. Appx. 497 (9th Cir. August 27, 2004).

After the insurance companies sued him, Dr. Robinson filed for bankruptcy. In another disposition, we affirmed the district court's sanctions against Dr. Robinson and his attorney, Roy Dickson, for misconduct and bad faith in connection with the filing and prosecution of the bankruptcy petition.[2] Dr. Robinson had "failed to disclose his ownership of real property, incorrectly reported the value for his residential property, and failed to include Cigna as a creditor in its schedules," and both Robinson and Dickson "knowingly deceived the court and acted in bad faith" by submitting "perjured declarations, fabricated evidence and frivolous pleadings."[3] This appeal is a continuation of that pattern.

The insurance companies who are plaintiffs and appellees brought this case as a RICO action against numerous Southern California surgeons and surgery clinics. The complaint alleged that the surgeons and surgery clinics operated a fraudulent billing scheme.[4] The case never got to trial, because after years of evasion of discovery obligations by Robinson and his clinic, Providence Ambulatory Surgery Center, the district court entered a default judgment for $2,034,954.51. Robinson and Providence appeal the case dispositive sanction.

## Analysis

The appellants' brief argues that the order requiring discovery did not apply to Robinson, because he was in bankruptcy proceedings (and protected by the automatic stay) when it was issued. And it argues the order did not apply to Providence, because Providence was in default at that time, and the order excluded parties in default. It also argues that the sanction

---

[2]*Robinson v. Cigna Emple. Benefits Serv. (In re Robinson)*, 36 Fed. Appx. 329 (9th Cir. 2002).

[3]*Robinson v. Cigna Emple. Benefits Serv. (In re Robinson)*, 36 Fed. Appx. 329, 330 (9th Cir. 2002).

[4]*Connecticut General Life Insurance Company v. New Images of Beverly Hills*, 321 F.3d 878, 879-80 (9th Cir. 2003).

was excessive, because Robinson and Providence's noncompliance was inadvertent.

The core of the appellants' argument is yet another fraud on the court. The appellants' brief states that "Dr. Robinson was in Bankruptcy until July of 2000." This is important because a bankruptcy stay would prevent the April 2000 order compelling discovery from applying to Dr. Robinson when it was issued. The appellants's brief states as a fact that the order granting relief from the stay and permitting litigation against Dr. Robinson to proceed, "was not operative until July 10, 2000."

To support this critical factual assertion, appellants cite to their excerpts of record, where the docket sheet is reproduced. The docket sheet as reproduced in the appellants' excerpts of record shows the date for the order granting relief from the bankruptcy stay as "7/00." That looks as though it means July 2000, supporting the brief.

But that is false. In fact, the order was entered March 17, 2000. Appellants made March look like July by photocopying the docket sheet so that part of the left side did not copy. Thus, "03/17/00" became "7/00."

Appellees pointed this out in their brief. Yet when it was called to appellants' attention in the opposition brief in this appeal, they did not confess error. They did not file a reply brief. Instead, a year and a half later, after the case was submitted for decision without oral argument, appellants sent the court a "notice of errata" stating that the correct date was April, rather than July as they had claimed, and making a new argument.[5]

---

[5]We struck the letter because leave to rebrief the case on a new theory was neither requested nor given. The new theory appears meritless on its face.

When Robinson and Providence finally responded to the order compelling discovery, their response approached contumaciousness. Defendants' discovery responses appear calculated to prevent plaintiffs from learning and proving the truth. Robinson refused to answer some questions and provide some documents, such as those asking whether he paid people to recruit patients (a crime in California[6]), on the ground that his answers might tend to incriminate him. Robinson and Providence claimed that patient charts and records had been "misplaced or lost" and that they were "unable to locate said charts."

Besides obtaining patient records, plaintiffs needed to find former staff, who could be compelled to testify under oath about what went on. The interrogatories asked for the names, last known addresses, and phone numbers of former employees, and answers were required by court order. But defendants did not provide them. Dr. Robinson and Providence hid the identities and locations of former employees by providing no addresses or phone numbers, and listing some only by first name or nickname. For example, they "identified" former employees as "Jenny - Surgical Consultant," " 'Duke' - Office Admistrator [sic]," " 'Lisa' - Biller / Collection / Surgery / Scheduling," " 'Chalon' - Billing / Collections," "Patty - Office Manager," "Maritza - Office Manager," "Bob - Office Administrator," and " 'Bud' Altman - Surgical Techinician [sic]." The practical effect, as any lawyer would anticipate, was to frustrate effective discovery that would expose fraudulent billing by preventing the insurance companies from finding employees who could testify to it. These responses and others amounted to avoidance, not compliance, with discovery obligations.

The district court warned defendants in July that it would "entertain a motion for terminating sanctions by plaintiffs

---

[6]*See* Cal. Bus. & Prof. Code § 650; Cal. Ins. Code §§ 750, 1871.7; Cal. Penal Code §§ 549, 550.

against any defendant who does not fully comply" with the order compelling discovery. After another year and a half of evasion and noncompliance, Connecticut General filed a motion for terminating sanctions against Dr. Robinson and Providence. Dr. Robinson and Providence filed no opposition. The district court examined the motion, found it meritorious on its face, and ordered "terminating sanctions" against Dr. Robinson and Providence, by which it meant default judgment under Rule 37.[7]

After the order was issued, Dr. Robinson and Providence filed an opposition to the motion, claiming they had mailed it earlier (but on the date it was supposed to have been filed, so it would still have been late). Despite the untimeliness of the opposition, the district court reconsidered its order in light of the opposition, and ordered a response. After considering these filings, the district court again imposed a terminating sanction, judgment by default. Judgment was entered against Robinson and Providence on the complaint for $2,034,954.51.

Because it was predicated on a lie, Dr. Robinson's argument that the bankruptcy stay protected him from the order to compel fails. The stay had been dissolved. Likewise, Robinson and Providence's argument that they were not warned relies on a false premise. They were warned, in the language quoted above. Their argument that the order compelling responses was not timely served is also false in fact, and depends on the tricky photocopying of the docket sheet that hid the first few characters. Providence argues that the order to compel did not apply to it, because it was in default and the order did not apply to parties in default. But Providence succeeded in getting the default set aside. And after it did, the district court expressly stated that, "All defendants are cautioned that the court will entertain a motion for terminating sanctions by plaintiffs against any defendant who does not fully comply" with all discovery obligations, including but

---

[7]Fed. R. Civ. P. 37.

not limited to the order entered before Providence got its default set aside.

A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe. We review discovery sanctions for abuse of discretion.[8] Only "willfulness, bad faith, and fault" justify terminating sanctions.[9]

[1] We have constructed a five-part test, with three sub-parts to the fifth part, to determine whether a case-dispositive sanction under Rule 37(b)(2) is just: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."[10] The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions.[11] This "test" is not mechanical. It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow:

> Like most elaborate multifactor tests, our test has not been what it appears to be, a mechanical means of determining what discovery sanction is just. The list of factors amounts to a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything, and not

---

[8]*Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003).

[9]*Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003).

[10]*Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (quoting *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987).

[11]*Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).

a script for making what the district judge does appeal-proof.**¹²**

**[2]** In this case, the district court issued a terse order and did not engage in extended discussion. But the record makes application of all the factors so clear that no extended discussion was needed. "Although it is preferred, it is not required that the district court make explicit findings in order to show that it has considered these factors and we may review the record independently to determine if the district court has abused its discretion."**¹³**

The record in this case, as we have discussed, amply supports sanctions. In deciding whether to impose case-dispositive sanctions, the most critical factor is not merely delay or docket management concerns, but truth. "What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations 'threaten to interfere with the rightful decision of the case.' "**¹⁴**

**[3]** Sometimes courts respond to contumacious refusal to produce required discovery or comply with orders compelling discovery with suggestions that lawyers "quit squabbling like children" and work things out for themselves. That can operate to the advantage of a dishonest, noncompliant party, and

---

**¹²***Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).

**¹³***Allen v. Bayer Corp. (In re: Phenylpropanolamine (PPA) Prods. Liab. Litig.)*, 460 F.3d 1217, 1226 (9th Cir. 2006) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). *See also Adriana Intl. Corp. v. Lewis & Co.*, 913 F.2d 1406, 1412 (9th Cir. 1990) ("If the district court fails to make explicit findings regarding each of these factors, the appellate court must review the record independently to determine whether the dismissal was an abuse of discretion.").

**¹⁴***Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (quoting *Adriana Intl. Corp. v. Lewis & Co.*, 913 F.2d 1406, 1412 (9th Cir. 1990)).

can prevent the truth from coming out. Federal Rule of Civil Procedure 1 requires that the rules be construed to secure the "just" resolution of disputes. "There is no point to a lawsuit, if it merely applies law to lies."[15] The most critical factor to be considered in case-dispositive sanctions is whether "a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts."[16] Dickson's "pattern of deception and discovery abuse made it impossible for the district court to conduct another trial with any reasonable assurance that the truth would be available. It is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct."[17]

[4] "Where a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate."[18] This was just such a case. The district court did its duty, and fairly exercised its discretion in order to secure a just resolution of the dispute.[19]

**AFFIRM.**

---

[15]*Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998).

[16]*Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998).

[17]*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 352 (9th Cir. 1995).

[18]*Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998).

[19]We are sending a copy of this decision to the California Bar for such action as it may deem appropriate regarding Mr. Dickson.