**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MADELINE CARDENAS; ROLANDO
MORA-HUERTA,
              *Plaintiffs-Appellants*,

v.

UNITED STATES OF AMERICA;
LORETTA E. LYNCH, Attorney
General; RAND BEERS, in his
official capacity as Secretary of
Homeland Security; JOHN F.
KERRY, United States Secretary
of State; IAN BROWNLEE, Consul
General of The United States,
City of Ciudad Juarez; JOHN
DOES, 1–7, Consular Officers,
American Consulate General
Visa Section at Ciudad Juarez,
              *Defendants-Appellees.*

No. 13-35957

D.C. No.
1:12-cv-00346-EJL

OPINION

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted May 5, 2016
Portland, Oregon

Filed June 21, 2016

Before:  Richard C. Tallman and Andrew D. Hurwitz, Circuit Judges and Anthony J. Battaglia,[*] District Judge.

Opinion by Judge Hurwitz

## SUMMARY[**]

### Immigration

The panel affirmed the district court's dismissal for failure to state a claim of United States citizen Madeline Cardenas' complaint challenging the denial by the U.S. consulate in Ciudad Juárez, Mexico, of her husband's visa application.

The panel held that Justice Kennedy's concurrence in *Kerry v. Din*, 135 S. Ct. 2128 (2015), is the controlling opinion regarding the standard of judicial review applicable to a visa denial.  The panel held that the consular officer in this case satisfied the "facially legitimate and bona fide reason" test, because he cited a valid statute of inadmissibility and gave a bona fide factual reason that provided a "facial connection" to the ground of inadmissibility: the belief that Cardenas' husband was a gang associate with ties to the Sureno gang.

[*] The Honorable Anthony J. Battaglia, District Judge for the U.S. District Court for the Southern District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Maria Elena Andrade, (argued) and Benjamin Stein, Andrade Legal, Boise, Idaho; Robert Pauw (argued), Gibbs Houston Pauw, Seattle Washington, for Plaintiffs-Appellants.

Katherine E.M. Goettel, (argued) and Stacey I. Young, Senior Litigation Counsel; Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division; William C. Peachey, Director; United States Department of Justice, Office of Immigration Litigation, Chicago, Illinois, for Defendants-Appellees.

Robert Pauw, Gibbs Houston Pauw, Seattle Washington; Charles Roth, Director of Litigation, National Immigrant Justice Center, Chicago, Illinois; Hiroshi Motomura, Los Angeles, California; for Amicus Curiae Law School Professors.

Deborah S. Smith, Immigration Clinic Director, University of Idaho College of Law, Moscow, Idaho, for Amicus Curiae American Immigration Lawyers Association.

**OPINION**

HURWITZ, Circuit Judge:

A consular officer denied the visa application of Rolando Mora-Huerta, a Mexican national, on the ground that he was a "gang associate" who intended to enter the United States to engage in unlawful conduct. *See* 8 U.S.C. § 1182(a)(3)(A)(ii). This suit, by Mora's wife, Madeline Cardenas, a United States citizen, attacks the consular officer's decision. The district court dismissed Cardenas' complaint for failure to state a claim.

The critical issue on appeal is the standard of judicial review applicable to the visa denial. In *Kleindienst v. Mandel*, the Supreme Court explained that judicial review of a denial that implicates a constitutional right is limited to ensuring that the decision was supported by a "facially legitimate and bona fide reason." 408 U.S. 753, 770 (1972). But, because that standard "is used relatively infrequently," its precise meaning has long been "elusive." *Marczak v. Greene*, 971 F.2d 510, 517 (10th Cir. 1992). The Supreme Court again addressed the issue in *Kerry v. Din*, 135 S. Ct. 2128 (2015), but was unable to agree on a single rationale for denying relief. We hold today that, under *Marks v. United States*, 430 U.S. 188, 193 (1977), and our recent en banc decision in *United States v. Davis*, No. 13-30133 (9th Cir. June 13, 2016), Justice Kennedy's concurrence in *Din* is the controlling opinion. Applying that opinion, we affirm the district court's dismissal of Cardenas' complaint.

## I.  Background[1]

In June 2008, Mora, who had no lawful status allowing his presence in this country, was routed into removal proceedings after a traffic stop.  U.S. Immigration and Customs Enforcement ("ICE") created a Form I-213 "Record of Inadmissible Alien" that states, "MORA was identified as a Sureno gang associate . . . by Nampa Police Department" and that "MORA was a passenger in a vehicle owned and driven by a [REDACTED] who had identifiers consistent to being a member of the Sureno gang."

Mora voluntarily departed to Mexico, and Cardenas filed an immediate-relative petition on his behalf.[2]  The Citizenship and Immigration Service approved the petition and Mora applied for a visa.  On March 5, 2010, he was interviewed by a consular officer in Ciudad Juárez, Mexico, who asked him whether he was in a criminal gang; Mora denied gang membership.

Several months later, the consulate denied Mora's visa application, citing 8 U.S.C. § 1182(a)(3)(A)(ii), which makes inadmissible "[a]ny alien who a consular officer or the

---

[1] Because this is an appeal from an order dismissing the first amended complaint for failure to state a claim, we take its well-pleaded allegations as true.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[2] An immediate-relative petition allows a child, spouse, or parent of a U.S. citizen to become eligible to enter the United States as a lawful permanent resident, *Robinson v. Napolitano*, 554 F.3d 358, 361 (3d Cir. 2009), without waiting the "years—or even decades" that other visa applicants do, *Scialabba v. Cuellar de Osorio*, 134 S. Ct. 2191, 2199 (2014).

Attorney General knows, or has reasonable ground to believe, seeks to enter the United States to engage solely, principally, or incidentally in . . . any other unlawful activity."**[3]**   An official with the Ciudad Juárez consulate later clarified the basis for this decision in an email to Mora's prior counsel:

> At the time of Mr. Mora's June 16, 2008 arrest, Mr. Mora was identified as a gang associate by law enforcement.   The circumstances of Mr. Mora's arrest, as well as information gleaned during the consular interview, gave the consular officer sufficient "reason to believe" that Mr. Mora has ties to an organized street gang.

In September 2010, Mora submitted evidence to the consulate in support of his continued denial of gang association.  On February 8, 2012, the consulate stated that, after "careful review" of the additional evidence, it would not overturn the inadmissibility determination.  Mora asked the State Department to issue an Advisory Opinion overturning the consular officer's decision; the Department declined.

Cardenas and Mora (collectively, "Cardenas") then filed this suit challenging the § 1182(a)(3)(A)(ii) inadmissibility determination.  The parties stipulated to an extension of time

---

[3] Mora's visa application was also denied under 8 U.S.C. § 1182(a)(9)(B)(i)(II), which renders inadmissible for 10 years any alien unlawfully present in the United States for one year or more.  Plaintiffs do not challenge that ground, which can be waived.  *See* 8 U.S.C. § 1182(a)(9)(B)(v).  The government also initially denied Mora's visa under 8 U.S.C. § 1182(a)(9)(A)(i), which makes inadmissible any alien ordered removed under certain provisions of law, but later withdrew that ground for denial because Mora had voluntarily departed.

to answer the complaint to allow a second consular interview and presentation of additional evidence. At the second interview, Mora attempted to present an expert opinion stating that he has never been a member of a gang, along with a letter stating that he was accepted into a tattoo removal program, but consular officers refused to accept or review these documents. The consulate again denied Mora's visa application under § 1182(a)(3)(A)(ii).

Cardenas then moved to compel the government to answer the complaint and attached as exhibits to her motion the documents the consular officers had refused to accept and an affidavit from Mora describing the interview. The government simultaneously moved to dismiss the complaint. Cardenas sought leave to file a first amended complaint, adding defendants and describing the second interview and denial.

The district court granted the motion to amend, construed the motion to dismiss the original complaint as a motion to dismiss the first amended complaint, and granted the motion. Citing *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008), the court held that Cardenas had a protected liberty interest in marriage entitling her to seek review of the denial of Mora's visa application. But, the court found the consular officer's determination "facially legitimate and bona fide" because he had reason to believe that Mora had "ties" to a gang.

Cardenas timely appealed. We have jurisdiction under 28 U.S.C. § 1291. We review a dismissal for failure to state a claim de novo. *Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003).

## II.  Discussion

### A.  The Doctrine of Consular Non-Reviewability

The Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Shaughnessy v. Mezei*, 345 U.S. 206, 210 (1953)).  Congress has "plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." *Mandel*, 408 U.S. at 766 (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)).  "When Congress delegates this plenary power to the Executive, the Executive's decisions are likewise generally shielded from administrative or judicial review." *Andrade-Garcia v. Lynch*, No. 13-74115, — F.3d —, 2016 WL 1719320, at *3 (9th Cir. Apr. 29, 2016).

"Despite these rulings, 'courts have identified a limited exception to the doctrine of consular nonreviewability where the denial of a visa implicates the constitutional rights of American citizens.'" *Id.* (quoting *Bustamante*, 531 F.3d at 1061) (alteration omitted).  This limited exception traces to the Supreme Court's decision in *Mandel*.  Ernest Mandel was a Belgian journalist, author, and revolutionary Marxist, who had been temporarily admitted to the United States in 1962 and 1968 as a journalist and campus speaker. *Mandel*, 408 U.S. at 756.  On both occasions, Mandel was found ineligible for admission under § 212(a)(28) of the Immigration and Nationality Act, which barred aliens who advocate world communism, but the Attorney General gave him a discretionary waiver. *Id.* at 757.  In 1969, Mandel was invited to speak at several American universities. *Id.* at

756–57. The consulate denied Mandel's visa application, again finding him inadmissible under § 212(a)(28). *Id.* at 757–58. The Attorney General declined to grant a waiver because Mandel's 1968 travels "went far beyond the stated purposes of his trip, on the basis of which his admission had been authorized and represented a flagrant abuse of the opportunities afforded him to express his views in this country." *Id.* at 759. Mandel sued, joined by a number of American professors who had invited him to speak or expected to participate in colloquia with him. *Id.* at 759–60.

While the Supreme Court held that "Mandel personally, as an unadmitted and nonresident alien, had no constitutional right of entry," the Court found that the denial of Mandel's visa implicated the professors' First Amendment rights to receive ideas. *Id.* at 762, 765–67. The Supreme Court found, however, that Congress's plenary power to exclude aliens prevailed. *Id.* at 765–69. Congress could have enacted a blanket prohibition on the admission of communist aliens; instead, it had delegated to the Attorney General the discretion to waive this prohibition. *Id.* at 767, 770. And, "when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant." *Id.* at 770.

The Supreme Court returned to the reviewability of consular visa decisions last year in *Din*. Fauzia Din, a U.S. citizen, was married to Kanishka Berashk, an Afghan citizen who worked as a payroll clerk at the Afghan Ministry of Social Welfare during Taliban rule. *Din v. Kerry*, 718 F.3d 856, 858 (9th Cir. 2013), *vacated*, 135 S. Ct. 2128 (2015).

The consulate denied Berashk's visa application, finding him inadmissible under 8 U.S.C. § 1182(a)(3)(B), "a broad provision that excludes aliens on a variety of terrorism-related grounds." *Id.* The government did not provide any further explanation of the denial or specify which of the nine subsections of § 1182(a)(3)(B) applied. *Id.* at 858–59; *Din*, 135 S. Ct. at 2132.

Din sued, relying on *Bustamante*, which held that under the Due Process Clause, *Mandel* judicial review is available when a citizen's spouse is denied a visa. *See Bustamante*, 531 F.3d at 1062. The district court granted the government's motion to dismiss. We reversed, holding that *Mandel* requires "the identification of both a properly construed statute that provides a ground of exclusion and the consular officer's assurance that he or she 'knows or has reason to believe' that the visa applicant has done something fitting within the proscribed category." *Din*, 718 F.3d at 856 (quoting *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 126 (2d Cir. 2009)). We found that the government had not met this standard, because it did not offer the factual basis for its denial or "cite to a ground narrow enough to allow us to determine that [the statute] has been 'properly construed.'" *Id.* at 861–62 (quoting *Am. Acad.*, 573 F.3d at 126).

A fractured Supreme Court reversed. The plurality opinion by Justice Scalia, joined by the Chief Justice and Justice Thomas, rejected our holding in *Bustamante* and stated that a citizen whose spouse is denied a visa is not injured under the Due Process Clause. *Din*, 135 S. Ct. at 2131. Accordingly, the plurality found that no process was due to Din under the Constitution because she "was not deprived of 'life, liberty, or property' when the Government

denied [her spouse] admission to the United States." *Id.* at 2138.

Justice Kennedy, joined by Justice Alito, concurred in the judgment. *Id.* at 2139. The concurrence assumed without deciding that Din's constitutional rights were burdened by the visa denial, but held that the reasons for the visa denial given by the Government satisfied *Mandel*'s "facially legitimate and bona fide" standard. *Id.* at 2140. The concurrence found that the consular officer's citation to § 1182(a)(3)(B) provided a facially legitimate reason to deny admission and "indicates [the government] relied upon a bona fide factual basis." *Id.*

Justice Kennedy's concurring opinion expressly rejected Din's claim that the government was required to provide additional facts underlying the determination.

> But unlike the waiver provision at issue in *Mandel*, which granted the Attorney General nearly unbridled discretion, § 1182(a)(3)(B) specifies discrete factual predicates the consular officer must find to exist before denying a visa. Din, moreover, admits in her Complaint that Berashk worked for the Taliban government, which, even if itself insufficient to support exclusion, provides at least a facial connection to terrorist activity. Absent an affirmative showing of bad faith on the part of the consular officer who denied Berashk a visa—which Din has not plausibly alleged with sufficient particularity—*Mandel* instructs us not to "look behind" the Government's exclusion of Berashk for

additional factual details beyond what its express reliance on § 1182(a)(3)(B) encompassed.

*Id.* at 2140–41 (quoting *Mandel*, 408 U.S. at 770) (other citation omitted).[4]

## B.  The Law After *Din*

Because no single rationale commanded a majority of the Court in *Din*, Cardenas urges us to re-adopt the standard in our opinion in that case. However, our *Din* approach was squarely rejected by a majority of the Supreme Court, *Din*, 135 S. Ct. at 2131, and therefore we are not free to return to it.

The government argues that Justice Kennedy's concurrence controls. We agree. In *Marks v. United States*, the Supreme Court held that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." 430 U.S. 188, 193 (1977) (internal quotation marks and citation omitted). As we recently explained, "the narrowest

---

[4] The four dissenting Justices would have held that Din was denied due process because the government failed to give her "a statement of reasons, some kind of explanation, as to why the State Department denied her husband a visa," which could have been "either the factual basis for the Government's decision or a sufficiently specific statutory subsection that conveys effectively the same information." *Id.* at 2144–45 (Breyer, J., dissenting); *see also id.* at 2146 (noting that perhaps the reason was Berashk's employment as a payroll clerk for the Taliban government, "[b]ut there is no way to know if that is so").

opinion must represent a common denominator of the Court's reasoning; it must embody a position implicitly approved by at least five Justices who support the judgment." *United States v. Davis*, No. 13-30133, slip op. at 14 (9th Cir. June 13, 2016) (en banc) (quoting *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991)); *accord Lair v. Bullock*, 697 F.3d 1200, 1205 (9th Cir. 2012) (the narrowest opinion must be the "logical subset of other, broader opinions" (quoting *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1140 (9th Cir. 2005)). "Stated differently, *Marks* applies when, for example, 'the concurrence posits a narrow test to which the plurality must *necessarily agree as a logical consequence* of its own, broader position." *United States v. Epps*, 707 F.3d 337, 348 (D.C. Cir. 2013) (quoting *King*, 950 F.2d at 782).

Justice Kennedy's concurrence fits this description. The *Din* plurality's broad position was that (1) "an unadmitted and nonresident alien . . . has no right of entry into the United States, and no cause of action to press in furtherance of his claim for admission," and (2) the Due Process Clause does not enable an alien's citizen spouse to bring suit on his behalf. 135 S. Ct. at 2131. The Kennedy concurrence's narrower position is that, even assuming a citizen spouse can bring such a challenge, the challenge fails as long as the consular officer has cited a valid statute of inadmissibility which implies a bona fide factual basis behind the denial. *Id.* at 2140–41. The plurality would necessarily agree that, when the consular officer cites such a statute, the denial stands, at least in a case only raising the due process rights of a citizen

spouse.  The Kennedy concurrence therefore represents the holding of the Court.[5]

Under the *Din* concurrence, the facially legitimate and bona fide reason test has two components.  First, the consular officer must deny the visa under a valid statute of inadmissibility.    *Id.* (consular officer's citation to § 1182(a)(3)(B) "suffices to show that the denial rested on a determination that Din's husband did not satisfy the statute's requirements," and "the Government's decision to exclude an alien it determines does not satisfy one or more of [the statutory conditions for entry] is facially legitimate under *Mandel*").    Second, the consular officer must cite an admissibility statute that "specifies discrete factual predicates the consular officer must find to exist before denying a visa," or there must be a fact in the record that "provides at least a facial connection to" the statutory ground of inadmissibility. *Id.* at 2141.  Once the government has made that showing, the plaintiff has the burden of proving that the reason was not bona fide by making an "affirmative showing of bad faith on the part of the consular officer who denied [ ] a visa."  *Id.*

## C.  Application of the *Din* Test

As Cardenas implicitly recognizes by advocating for a broader standard of review, adoption of Justice Kennedy's *Din* concurrence as the controlling opinion of the Court dooms her claims in this case.  The consular officer gave a facially legitimate reason to deny Mora's visa because he cited a valid statute of inadmissibility, § 1182(a)(3)(A)(ii),

---

[5] Justice Kennedy's concurrence would also control under the "results" approach urged in Judge Bea's *Davis* dissent.  *See Davis*, No. 13-30133, slip op. at 43 (Bea, J., dissenting).

which denies entry to an alien who intends to enter with the intent to engage in "unlawful activity." He also provided a bona fide factual reason that provided a "facial connection" to the statutory ground of inadmissibility: the belief that Mora was a "gang associate" with ties to the Sureno gang.[6]

Cardenas argues that she properly alleged bad faith because, when Mora appeared for the second interview, the consular officer refused to accept or review the proffered expert opinion that Mora had never been a gang member or the letter showing his acceptance into a tattoo removal program. But, the allegations about the second interview obviously cannot raise a plausible inference that the officer acted in bad faith in making the original decision. And, although counsel's purpose in arranging the second interview was to allow Mora to submit additional evidence, that the consular officer did not accept Mora's new documents does not show bad faith. During his second interview, Mora was extensively questioned by two officials and was given the opportunity to argue that he had no ties to the Sureno gang.[7]

---

[6] Cardenas argues that the statutory phrase "any other unlawful activity" only refers to unlawful activity related to national security, citing the heading and other subsections of § 1182(a)(3)(A). But, Cardenas waived this argument by failing to raise it below—she did not mention the words "national security" in her response to the motion to dismiss, much less argue that the statute was so limited. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (arguments raised for the first time on appeal are usually not considered).

[7] In any event, as the government noted at argument, the visa denial is without prejudice to future applications. If Mora has new information, he can submit a new visa application.

Cardenas also alleges that the consular officer acted on the basis of racial stereotypes. According to Mora's affidavit, at his second interview, he told the consular officer that he was pulled over on the way to the home of his friend, Cuauhtemoc Coss. They then discussed whether Coss was a gang member. When Mora said that Coss had two tattoos, one featuring the name of his daughter and another saying "Brown Pride," the officer said, "[w]ith those tattoos, you don't believe he's a gang member?" Mora asserts that this was racial discrimination and therefore bad faith. But, the conversation about Coss is not alleged in the first amended complaint; it is only mentioned in Mora's affidavit, which was attached to Cardenas' motion to have defendants answer the complaint. And, even if the affidavit is considered, the remark does not plausibly establish that the decision to deny Mora a visa was made on a forbidden racial basis, as opposed to a possibly mistaken basis about what Coss' tattoos signified. *See Din*, 135 S. Ct. at 2141 (Kennedy, J., concurring) (requiring that bad faith be "plausibly alleged with sufficient particularity").

## CONCLUSION

The judgment of the district court is **AFFIRMED**.