**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-2146

ANTHONY M. SESAY; MABINTY SESAY,

            Plaintiffs – Appellants,

v.

UNITED STATES OF AMERICA; JEFFREY A. ROSEN, Acting United States
Attorney General; CHAD WOLF, Acting Secretary of the Department of Homeland
Security; MICHAEL R. POMPEO, Secretary of State; MARIA E. BREWER,
Ambassador of the United States in Freetown, Sierra Leone; NUMBER 1 JANE
DOE, Employee of U.S. Government and Adjudicating Officer at U.S. Embassy in
Freetown, Sierra Leone,

            Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, Senior District Judge.  (8:18-cv-01397-DKC)

Argued:  December 10, 2020                          Decided:  January 5, 2021

Before WILKINSON and FLOYD, Circuit Judges, and Gina M. GROH, Chief United
States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Floyd
and Chief Judge Groh joined.

**ARGUED**: Parva Fattahi, FATTAHI IMMIGRATION LAW, LLC, Rockville, Maryland,
for Appellants.  Alan Carl Lazerow, OFFICE OF THE UNITED STATES ATTORNEY,

Baltimore, Maryland, for Appellees.  ON BRIEF:  Robert K. Hur, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellees.

WILKINSON, Circuit Judge:

Appellants Anthony Sesay, a United States citizen, and his daughter Mabinty Sesay, a citizen and resident of Sierra Leone, challenge the denial of a visa to Ms. Sesay. The district court dismissed appellants' complaint under the doctrine of consular nonreviewability. We affirm.

I.

An alien must generally be issued an immigrant or nonimmigrant visa in order to enter the United States. *See* 8 U.S.C. §§ 1181(a), 1182(a)(7).[1] A State Department consular officer makes the decision whether to grant or deny a visa, *see* 8 U.S.C. § 1201(a)(1), and the applicant bears the burden of proving "to the satisfaction of the consular officer that he is eligible to receive a visa," 8 U.S.C. § 1361.

Appellants began this process in October 2016 when Mr. Sesay filed an immediate-relative petition on behalf of Ms. Sesay with the U.S. Citizenship and Immigration Services of the Department of Homeland Security. After the petition was approved, Ms. Sesay applied for a visa. In November 2017, a consular officer interviewed her at the U.S. Consulate in Sierra Leone. During this interview, the consular officer suspected Ms. Sesay of lying about her age. Appellants were informed that Ms. Sesay's application would remain pending until she could "prove her age," an essential fact for her visa application.

---

[1] Consistent with the Immigration and Nationality Act, we employ the term "alien." *See* 8 U.S.C. § 1101(a)(3) (defining the term "alien" as "any person not a citizen or national of the United States").

J.A. 34; *see also* 8 U.S.C. §§ 1101(b)(1), 1151(f)(1). Appellants supplied further documentation in December 2017.

Appellants then filed a complaint in April 2018 seeking a declaratory judgment and writ of mandamus to compel adjudication of Ms. Sesay's application. During these proceedings, the government informed appellants that Ms. Sesay's application was denied in November 2017 under 8 U.S.C. § 1201(g) due to Ms. Sesay's failure to supply necessary documentation. In particular, the government informed appellants that it requested Ms. Sesay's "National Primary School Examination or Basic Educational Certificate Examination index number and associated documents" in December 2017 in order to verify her age, but that, "[t]o date, [Ms. Sesay had] not provided these documents." J.A. 48. Appellants subsequently filed a motion for a temporary restraining order on May 10, 2018, after which the government informed appellants that Ms. Sesay's application was further denied on May 3, 2018, under 8 U.S.C. § 1182(a)(6)(C)(i) because Ms. Sesay had made "a material misrepresentation to obtain a visa by misrepresenting her age and presenting a passport in a false identity." J.A. 66.

After getting this notice, appellants voluntarily dismissed the April 2018 complaint on May 14, 2018, as they had received the adjudication they sought. Brief of Appellee at 3–4 (citing Case No. 8:18-cv-01112 (D. Md.), at ECF No. 14). However, just before dismissing the April 2018 complaint, appellants filed this action in district court.

The government moved to dismiss the action in July 2018, which the district court granted in February 2019 under the doctrine of consular nonreviewability. *Sesay v. United States*, No. DKC 18-1397, 2019 WL 670244 (D. Md. Feb. 19, 2019). The district court

found that Ms. Sesay "ha[d] no constitutional right to enter the United States as an unadmitted and nonresident alien." *Id*. at \*4. Moreover, the government's actions—citing the applicable inadmissibility provision and reviewing Ms. Sesay's additional documents—provided a "facially legitimate and bona fide" reason for the denial, which *Mandel* and Justice Kennedy's concurrence in *Kerry v. Din* instruct us is required when a U.S. citizen's constitutional rights are burdened by a visa denial. *Id.* at \*3–5 (citing *Kleindienst v. Mandel*, 408 U.S. 753 (1972); *Kerry v. Din*, 576 U.S. 86 (2015) (Kennedy, J., concurring in the judgment)). The court further found that appellants had not made an affirmative showing of bad faith, which would allow the court to consider the factual details underlying the consular officer's decision. *Id.* at \*4–5. Appellants filed a motion for reconsideration in March 2019, which the district court denied. *Sesay v. United States*, No. DKC 18-1397, 2019 WL 3817263 (D. Md. Aug. 14, 2019). This appeal timely followed.

II.

Appellants argue that the district court erred in dismissing their complaint because, *inter alia*, it misapplied the doctrine of consular nonreviewability. We review this dismissal *de novo*. *Cardenas v. United States*, 826 F.3d 1164, 1169 (9th Cir. 2016).

The doctrine of consular nonreviewability is well established. It instructs that ordinarily, "it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *see also Kleindienst v. Mandel*, 408 U.S. 753, 765–66 (1972). The primacy of the political branches over immigration policy is a function of the separation of powers. *See Fiallo v. Bell*, 430

5

U.S. 787, 798 (1977). Accordingly, judicial deference is required where executive officials, such as the consular officer here, possess expertise in matters falling outside judicial competency, including local conditions in foreign countries, diplomatic relationships and protocols, and national security needs. *See Negusie v. Holder*, 555 U.S. 511, 517 (2009).

The Supreme Court recognized a narrow exception to this general rule in *Mandel,* allowing for limited judicial review when a U.S. citizen's own constitutional rights (here Mr. Sesay's) are assertedly burdened by a visa denial. *Mandel*, 408 U.S. at 770. As Justice Kennedy explained in his concurring opinion in *Kerry v. Din*, when there is such a burden, an executive officer's decision to deny a visa is only valid when made "on the basis of a facially legitimate and bona fide reason." 576 U.S. 86, 104 (2015) (Kennedy, J., concurring in the judgment) (quoting *Mandel*, 408 U.S. at 770).[2]

In *Din*, Justice Kennedy found that even assuming a constitutional interest was burdened, the government satisfied its obligation of providing a "facially legitimate and bona fide reason" by simply providing notice of the statutory provision under which the visa was denied. *Id.* at 102–04. He explained: "Once this standard is met, 'courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against' the constitutional interests of citizens the visa denial might implicate." *Id.* at 104 (quoting *Mandel*, 408 U.S. at 770). For unless an applicant can affirmatively show bad

---

[2] We have previously recognized Justice Kennedy's concurrence as controlling. *Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233, 263 n.11 (4th Cir. 2018) (citing *Cardenas*, 826 F.3d at 1171), *vacated on other grounds*, 138 S. Ct. 2710 (2018).

6

faith by the consular officer, "*Mandel* instructs us not to 'look behind' the Government's exclusion . . . for additional factual details." *Id.* at 105 (quoting *Mandel*, 408 U.S. at 770). The Court recently reaffirmed this standard in *Trump v. Hawaii*, noting that "the Government need provide only a statutory citation to explain a visa denial." 138 S. Ct. 2392, 2419 (2018).

That judicial review in this context is "highly constrained" is unsurprising. *Id.* at 2420; *see also Matushkina v. Nielsen*, 877 F.3d 289, 291 (7th Cir. 2017). The narrow scope of review finds its roots in the Court's reiterations that the admission and exclusion of those seeking entry is a "fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Hawaii*, 138 S. Ct. at 2418 (quoting *Fiallo*, 430 U.S. at 792). It is well settled that this power is "inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 649–50 (4th Cir. 2020) (quoting *Mandel*, 408 U.S. at 765). While these crucial principles may not be readily apparent or implicated in any particular visa determination, their cumulative importance to the conduct of foreign policy and exercise of diplomatic relations is large. Judicial respect for the rightful prerogatives of others is an essential piece of this national design. And even on a practical level, there are literally countless visa applications each year, and to thrust courts into the "nuanced and difficult decision" that Congress has suitably situated amongst the executive's duties would mark no small change in our own role. *Din*, 576 U.S. at 103 (Kennedy, J., concurring in the judgment).

## III.

With that framework in mind, this appeal's outcome is clear. The doctrine of consular nonreviewability plainly prohibits this court from questioning the consular officer's visa determination. The Supreme Court has unambiguously instructed that absent some clear directive from Congress or an affirmative showing of bad faith, the government must simply provide a valid ineligibility provision as the basis for the visa denial. *Hawaii*, 138 S. Ct. at 2419.

The government met this obligation by providing 8 U.S.C. § 1201(g) and § 1182(a)(6)(C)(i) (an anti-fraud and misrepresentation provision) as the statutory bases for denial of Ms. Sesay's visa application. Moreover, not only did the consular officer provide the applicable statutory provisions as the bases for Ms. Sesay's visa denial, but the officer went further than necessary by explaining her decisionmaking—she found Ms. Sesay had proffered a falsified passport and lied about her age.

Appellants urge us to review those factual grounds for the denial, but the doctrine is clear: such an inquiry falls outside the limited scope of our review. For the doctrine of consular nonreviewability to have any meaning, we may not peer behind the decisional curtain and assess the wisdom of the consular determination. Probing the consular officer's decision would require reviewing the credibility of the applicant's testimony, the authenticity of the documentation, and balancing the reason for the denial against any constitutional interest allegedly burdened. *See Din*, 576 U.S. at 104 (Kennedy, J., concurring in the judgment). That we cannot do because the cited provisions are facially legitimate and appellants' attempts to establish bad faith involve nothing more than

8

conclusory allegations. As noted by the district court, the "unclear allegations enumerated by Plaintiffs do not plausibly allege a claim of bad faith with sufficient particularity." *Sesay*, 2019 WL 670244, at \*5. Indeed, appellants essentially argue that the consular officer displayed bad faith in doing her duty to ensure that Ms. Sesay's age was accurate.

In a further attempt to establish bad faith, appellants point to the many months of proceedings, but such back and forth only demonstrates the lack of bad faith in this case. Far from revealing some malicious intent, the months of requesting further documentation show that the government was doing its due diligence in ensuring all proper documentation was considered before exercising its discretion in granting a visa. *See Yafai v. Pompeo*, 912 F.3d 1018, 1022 (7th Cir. 2019) ("A request for additional documents is inconsistent with the plaintiffs' allegation that the officer ignored evidence in bad faith; on the contrary, the officer's willingness to reconsider [the] application in light of additional evidence suggests a desire to get it right.").

Moreover, the fact that the government adjudicated and denied Ms. Sesay's application under § 1182(a)(6)(C)(i) after appellants filed their April 2018 complaint seeking an adjudication was hardly illicit because the government merely took "the very action" that appellants sought. *Sesay*, 2019 WL 670244, at \*5 (citing *Saleh v. Tillerson,* 293 F. Supp. 3d 419, 431 (S.D.N.Y. 2018); *see also Baluch v. Sullivan*, 719 F. App'x 725, 726 (9th Cir. 2018). That the outcome of the adjudication was not to appellants' liking does not transform the consular action into one of bad faith. *Yafai*, 912 F.3d at 1022. Without this affirmative showing of bad faith, the government's actions in this case were

more than sufficient to satisfy its denial of the visa application under the "facially legitimate and bona fide" standard.

## IV.

For the foregoing reasons, we affirm the district court's decision dismissing the complaint under the doctrine of consular nonreviewability.

*AFFIRMED.*