[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-14889

_____

ANGELA DEL VALLE,

Plaintiff-Appellant,

*versus*

SECRETARY OF STATE, UNITED STATES DEPARTMENT OF STATE,

JOHN CREAMER,
Charge d'Affairs, United States Embassy,
Mexico City, Mexico,

Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 6:19-cv-00900-WWB-DCI

———————————

Before JORDAN, JILL PRYOR, and TJOFLAT, Circuit Judges.

JORDAN, Circuit Judge:

The doctrine of consular non-reviewability, established by the Supreme Court, bars judicial review of a consular official's decision regarding a visa application if the reason given is "facially legitimate and bona fide." *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972). *See also Kerry v. Din*, 576 U.S. 86, 103–04 (2015) (Kennedy, J., concurring in the judgment) (applying the doctrine). Although the doctrine was announced 50 years ago, we have never addressed its scope in a published opinion.

In this appeal, we address two questions. First, does the doctrine operate by stripping federal courts of their subject-matter jurisdiction? Second, does the doctrine require consular officials to identify or summarize the facts underlying a visa denial when the statutory provision of inadmissibility sets out factual predicates? We answer both questions in the negative.

## I

Through a Form I-130 (Petition for Alien Relative), a United

States citizen can seek to establish that certain alien relatives, including spouses, are "immediate relatives" eligible for an immigrant visa. *See* 8 U.S.C. §§ 1151(b)(2)(A)(i) & 1154(a)(1)(A)(i); 8 C.F.R. § 204.1(a)(1). Approval of a Form I-130 allows immediate relatives who had been admitted into the United States to apply to adjust their status to that of lawful permanent resident. *See* 8 U.S.C. § 1255(a). Immediate relatives residing outside the United States must apply for an immigrant visa at a United States Embassy or Consulate in their country of residence and attend an interview with a consular official. *See* 22 C.F.R §§ 42.61(a) & 42.62.

Angela Del Valle is a United States citizen. She is married to Carlos Del Valle, who is a Mexican citizen. In December of 2014, Mrs. Del Valle filed a Form I-130 for her husband with United States Citizenship and Immigration Services. Mr. Del Valle, though residing in the United States at the time, was undocumented. He was therefore ineligible to have his status adjusted to that of lawful permanent resident. *See* 8 U.S.C. § 1255(a). And because he had resided in the United States without status for over a year, upon returning to Mexico to apply for an immigrant visa he would have been inadmissible for a period of ten years. *See* 8 U.S.C. § 1182(a)(9)(B)(i)(II). That would have precluded him from obtaining a visa. Mr. Del Valle therefore applied for a provisional unlawful presence waiver, which would waive that ground of inadmissibility. *See* 8 C.F.R. § 212.7(e)(12). USCIS approved the waiver, allowing Mr. Del Valle to return to Mexico to obtain an immigrant visa.

Following an interview at the United States Consulate in Ciudad Juarez, Mexico, a consular official denied Mr. Del Valle's visa application on the ground that he was inadmissible under three subsections of 8 U.S.C. § 1182. The written notice of denial stated that Mr. Del Valle had sought to obtain an immigration benefit by fraudulently or falsely misrepresenting a material fact to a consular or immigration official, § 1182(a)(6)(C)(i); that he had falsely represented himself to be a United States citizen, §1182(a)(6)(C)(ii); and that he had unlawfully resided in the United States for over a year, § 1182(a)(9)(B)(i)(II). The notice did not set out the evidence or facts supporting the findings that Mr. Del Valle had committed acts that were encompassed by the relevant inadmissibility provisions.[1]

Mrs. Del Valle then filed suit against the government in the district court. Styling her action as one sounding in mandamus, she alleged that the consular official had mistaken an individual who had made false representations at ports of entry in 1995 and 2002 for her husband. By providing only citations to statutory inadmissibility provisions, Mrs. Del Valle asserted, the government had violated her Fifth Amendment due process rights. She claimed that it had "deprive[d] her of the opportunity to reside in the United States with her husband without providing any process or procedure aimed at ensuring the correct identification." D.E. 1 at 10.

---

[1] Though Mr. Del Valle's unlawful presence waiver had been approved, it was automatically revoked upon the denial of his immigrant visa application under 8 U.S.C. §§ 1182(a)(6)(C)(i) & (ii). *See* 8 C.F.R. § 212.7(e)(14)(i). It therefore never entered into force. *See* 8 C.F.R. § 212.7(e)(12)(i)(C).

Consequently, she requested that the court conduct an in camera review of the evidence underlying the consular official's visa denial to determine whether her husband had ever made the alleged fraudulent misrepresentations.

The government moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. It argued that the doctrine of consular non-reviewability either (i) deprived the court of subject-matter jurisdiction to review the consular official's denial, or (ii) caused Mrs. Del Valle's complaint to fail to state a claim upon which relief could be granted. Either way, the doctrine barred the district court from reviewing the substance of the visa denial.

The district court agreed with the government. It determined that the doctrine of consular non-reviewability precluded it from reviewing the consular official's decision because the statutory citations in the notice of denial constituted facially legitimate and bona fide reasons. The court also concluded that the doctrine operated by stripping it of jurisdiction. Accordingly, it dismissed Mrs. Del Valle's complaint without prejudice for lack of subject-matter jurisdiction. Mrs. Del Valle now appeals that dismissal.

## II

We review de novo a dismissal for lack of subject-matter jurisdiction. *See Lobo v. Celebrity Cruises, Inc.,* 704 F.3d 882, 891 (11th Cir. 2013). We may affirm a district court's dismissal on any ground supported by the record, so long as that ground has been

properly asserted. *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318–19 (11th Cir. 2012).

## III

The government argued below, and the district court agreed, that when applicable the doctrine of consular non-reviewability strips federal courts of subject-matter jurisdiction. Now, aligning itself with Mrs. Del Valle, the government concedes that the doctrine does not divest federal courts of jurisdiction. We are not bound by a party's concession regarding the existence of subject-matter jurisdiction, *see, e.g.*, *Johnson v. Sikes*, 730 F.2d 644, 647–48 (11th Cir. 1984), but based on our independent review we agree with Mrs. Del Valle and the government.

Article III of the Constitution confers subject-matter jurisdiction on federal courts over "all Cases, in Law and Equity, arising under this Constitution, [and] the Laws of the United States," subject to "such Exceptions, and under such Regulations as the Congress shall make." U.S. Const. art. III, § 2, cls. 1, 2. The lower federal courts are creatures of statute, and hence "[t]heir powers and duties depend upon the act calling them into existence, or subsequent acts extending or limiting their jurisdiction." *Ex parte Robinson*, 86 U.S. 505, 511 (1873). In short, "[f]ederal courts are courts of limited jurisdiction and possess only that power authorized by Constitution and statute." *Bishop v. Reno*, 210 F.3d 1295, 1298 (11th Cir. 2000) (internal quotation marks omitted). *See also Bowles v. Russell*, 551 U.S. 205, 212 (2007) ("Within constitutional bounds, Congress

decides what cases the federal courts have jurisdiction to consider."); *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) ("Only Congress may determine a lower federal court's subject-matter jurisdiction.").

As enunciated by the Supreme Court, the doctrine of consular non-reviewability recognizes that Congress has plenary power to make policies and rules for the exclusion of immigrants and has delegated decision-making authority on the issuance of visas to the Executive. *See Mandel*, 408 U.S. at 765–67, 769–70; *Din*, 576 U.S. at 103–04 (Kennedy, J., concurring in the judgment). Stemming from separation of powers concerns about intrusion on the political branches' authority, the doctrine instructs courts to refrain from reviewing the Executive's exercise of its delegated power so long as it is conducted "on the basis of a facially legitimate and bona fide reason." *Mandel*, 408 U.S. at 770. *See also Din*, 576 U.S. at 103 (Kennedy, J., concurring in the judgment).

The doctrine is, however, judicially created. It is not the consequence of legislation that divests federal courts of jurisdiction. *Cf. Trump v. Hawaii*, 138 S. Ct. 2392, 2407 (2018) ("The Government does not argue that the doctrine of consular nonreviewability goes to the Court's jurisdiction, . . . nor does it point to any provision of the INA that expressly strips the Court of jurisdiction over plaintiffs' claims."). As such, "our deference goes to our *willingness*, not our *power*," to review a consular official's decision on a visa application. *See Allen v. Milas*, 896 F.3d 1094, 1101 (9th Cir. 2018). In other words, the doctrine goes to the merits of a claim. *See*

*Matushkina v. Nielsen*, 877 F.3d 289, 294 n.2 (7th Cir. 2017) ("We treat the doctrine of consular nonreviewability as a matter of a case's merits rather than the federal courts' subject matter jurisdiction."); *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1027 (D.C. Cir. 2021) ("Dismissal based on consular nonreviewability . . . is a merits disposition.").

The district court here ruled that the doctrine was jurisdictional in nature. That conclusion was understandable because, at the time, we had issued an unpublished opinion holding that the doctrine was indeed jurisdictional. *See De Castro v. Fairman*, 164 F. App'x 930, 933–34 (11th Cir. 2006). But we now make clear that, when the doctrine of consular non-reviewability bars review of a consular official's decision, a district court should dismiss a suit challenging the decision under Rule 12(b)(6).

## IV

The parties disagree strongly on what constitutes "facially legitimate and bona fide" reasons under the doctrine of consular non-reviewability for the denial of a visa application. Mrs. Del Valle argues that reasons are (1) facially legitimate if they cite a valid statute of inadmissibility and (2) bona fide if they identify the discrete factual predicates that exist to deny a visa. *See* Appellant's Br. at 14. Because the notice of denial in this case only cited statutory inadmissibility provisions, Mrs. Del Valle contends that the reasons provided by the consular official fail the second prong of her proposed standard. The government responds that a mere citation to inadmissibility provisions is sufficient to constitute facially legitimate

19-14889                Opinion of the Court                9

and bona fide reasons. *See* Appellee's Br. at 14–15.

Mrs. Del Valle generally provides the correct standard, but the government reaches the correct result in this case. To explain why, we begin with a review of *Mandel* and *Din*, which provide the contemporary understanding of the consular non-reviewability doctrine.

## A

In *Mandel*, a Belgian professor sought a visa to enter the United States to participate in various university conferences. *See Mandel*, 408 U.S. at 756–57. He had previously been found ineligible to come to the United States under a provision of the Immigration and Nationality Act then in force that excluded persons who advocated communism. *See id.* at 755. In those instances, however, Mr. Mandel had been able to enter the United States thanks to a discretionary waiver of ineligibility by the Attorney General under another provision of INA. *See id.* at 757.

Mr. Mandel's visa application to attend the conferences was denied, again for advocating communism, and the Attorney General did not grant him a waiver. *See id.* at 757–59. A letter to Mr. Mandel explained that the waiver was denied because during one of his prior trips his activities "went far beyond the stated purposes of his trip, on the basis of which his admission had been authorized and represented a flagrant abuse of the opportunities afforded him to express his views in this country." *Id.* (internal quotation marks omitted). In other words, Mr. Mandel had violated the conditions

of one of the previous waivers.[2]

A group of university professors and Mr. Mandel filed suit against the government, alleging that the relevant provisions of the INA were unconstitutional facially and as applied. *See Mandel v. Mitchell*, 325 F. Supp. 620, 622 (E.D.N.Y. 1971). Specifically, they argued that the INA provisions imposed a prior restraint on constitutionally protected communication, in violation of the First Amendment, and failed to provide due process safeguards for determining visa eligibility or standards for the exercise of the Attorney General's discretion, in violation of the Fifth Amendment. *See id.* A three-judge district court held that, though Mr. Mandel had no right to enter the United States, the university professors had a First Amendment right to hear him explain his views. *See id.* at 631. The court declared the INA provisions unconstitutional and enjoined their enforcement. *See id.* at 634.

The government appealed to the Supreme Court. Among other things, it asserted that because Congress had delegated its plenary power to the Executive, it was not required to provide any reason justifying the exercise of its "unfettered discretion." *See Mandel*, 408 U.S. at 769. On the other hand, Mr. Mandel and the university professors argued that the Court should rule in their favor on the First Amendment claim because the government had

---

[2] The violations, apparently, were that Mr. Mandel had appeared at more speaking events than authorized and that he had attended a reception where political contributions were solicited. *See Mandel*, 408 U.S. at 759 n.5.

provided no justification for the Attorney General's denial of the waiver. *See id.*

The Supreme Court reversed the district court, but it did not issue the broad ruling urged by the government. Instead, it concluded that in Mr. Mandel's case the Attorney General had provided a "reason [that] was facially legitimate and bona fide" for denying the waiver request—Mr. Mandel's violation of the conditions of his prior waiver. *See id.* The Court held that "when the Executive exercises [Congress' delegated plenary power] negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against" the constitutional rights of those who challenge the decision. *See id.* at 770.

*Din*, a visa denial case, was decided more than 40 years after *Mandel.* In *Din*, one of the spouses, Ms. Din, was an American citizen. *See Din*, 576 U.S. at 89. Like Mrs. Del Valle, Ms. Din successfully petitioned to have her husband, Kanishka Berashk, classified as an immediate relative. *See id.* And, as happened to Mr. Del Valle, a consular official denied Mr. Berashk's visa application. *See id.* at 89-90. The consular official informed Mr. Berashk only that his application had been denied under 8 U.S.C. § 1182(a)(3)(B), a general provision of the INA with numerous subsections that render inadmissible any alien who has participated in terrorist activities as defined by the discrete factual predicates identified in those subsections. *See Din*, 576 U.S. at 89-90. Ms. Din sued, alleging that the government had violated her Fifth Amendment due process rights

12                    Opinion of the Court                    19-14889

because the denial deprived her of her right to live in the United States with her spouse without an explanation. *See id.* at 88.

Justice Scalia, writing for a three-member plurality of the Court, concluded that Ms. Din did not have a constitutional right to live with her spouse, and so she was due no process. *See id.* at 101. Justice Kennedy, joined by Justice Alito, concurred in the judgment. His separate opinion, which applied *Mandel*, serves as the holding in *Din.*[3]

---

[3] In *Marks v. United States*, 430 U.S. 188, 193 (1977), the Supreme Court held that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." We have explained that "the narrowest ground" means the "less far-reaching" ground. *See United States v. Robison*, 505 F.3d 1208, 1221 (11th Cir. 2007). For example, in *Robison* we held that Justice Kennedy's concurrence in *Rapanos v. United States*, 547 U.S. 715 (2006), constituted the holding of the Supreme Court because its interpretation of the Clean Water Act was less far-reaching than the plurality's interpretation. *See Robison*, 505 F.3d at 1221–22. That was so because Justice Kennedy's interpretation would more often classify a body of water in a way that would bring it within the scope of the Act's provisions. *See id.* at 1221–22. In other words, it was less restrictive of the Act's breadth. *See id.*

Similarly, Justice Kennedy's concurrence in *Din* is the less far-reaching ground in that case. Under the plurality opinion in *Din*, a U.S. citizen like Ms. Din has no constitutional right to live with her spouse in the United States. *See Din*, 576 U.S. at 101 (plurality opinion). Justice Kennedy's concurrence avoided the constitutional question, applied the doctrine of consular non-reviewability, and allowed for judicial review when a denial does not provide facially legitimate and bona fide reasons. *See id.* at 104–06 (Kennedy, J., concurring in the judgment).

Justice Kennedy concluded that, even if Ms. Din had a constitutional right to live with her spouse in the United States, the doctrine of consular non-reviewability limited review of the visa denial to whether the government had provided a facially legitimate and bona fide reason. *See id.* at 103 (Kennedy, J., concurring in the judgment). He determined that the consular official's citation to § 1182(a)(3)(B) was sufficient to make the reason facially legitimate. *See id.* at 104–05 ("The consular officer's citation of that provision suffices to show that the denial rested on a determination that [Ms.] Din's husband did not satisfy the statute's requirements . . . . [I]t follows that the Government's decision to exclude an alien it determines does not satisfy one or more of those conditions is facially legitimate under *Mandel*.").

Justice Kennedy also determined that the government had provided "a bona fide factual basis for denying a visa." *Id.* at 105. Ms. Din had argued that, just as the Attorney General had provided Mr. Mandel with an explanation of the facts underlying his refusal to grant a waiver, the consular official who denied her husband's application was likewise required to provide the facts underlying the visa denial. *See id.* But Justice Kennedy explained that "unlike the waiver provision at issue in *Mandel*, which granted the Attorney General nearly unbridled discretion, § 1182(a)(3)(B) specifies discrete factual predicates the consular official must find to exist before denying a visa." *Id.* And because Ms. Din had not plausibly alleged bad faith on the part of the consular official, the facially legitimate and bona fide reason provided by the government—the

14                    Opinion of the Court                    19-14889

citation to § 1182(a)(3)(B)—foreclosed further judicial review of the consular official's denial. *See id.*[4]

## B

Based on *Mandel* and Justice Kennedy's concurrence in *Din*, we agree with Mrs. Del Valle's premise that reasons are (1) facially legitimate when they cite valid statutory provisions of inadmissibility and (2) bona fide when they identify the factual predicates that exist for a visa denial. *See Yafai v. Pompeo*, 912 F.3d 1018, 1021 (7th Cir. 2019) ("For a consular officer's decision to be facially legitimate and bona fide, the consular officer must identify (1) a valid statute of inadmissibility and (2) the necessary discrete factual predicates under the statute.") (internal quotation marks omitted); *Cardenas v. United States*, 826 F.3d 1164, 1172 (9th Cir. 2016) ("[T]he facially legitimate and bona fide reason test has two components."). But we disagree with the conclusion that Mrs. Del Valle draws

---

[4] The INA requires the notice of a visa application denial based on a finding of inadmissibility to "list[ ] the specific provision or provisions of law under which the alien is inadmissible." 8 U.S.C. § 1182(b)(1)(B). In *Din*, the consular official cited only to § 1182(a)(3)(B), a general provision that encompasses numerous subsections identifying different, discrete factual predicates that result in inadmissibility. *See id.* Justice Kennedy explained that the citation to the general provision sufficed in *Din* because Congress had created an exception to the requirement that the notice cite to specific provisions when the denial is based on terrorism or national security-related grounds of inadmissibility. *See Din*, 576 U.S. at 105–06 (Kennedy, J., concurring in the judgment); § 1182(b)(3). Nothing in *Din* or our opinion today should be read as permitting a consular official to refer to a general provision where Congress has required citation to a specific provision.

from her premise—that because the consular official did not identify the real-world facts (the who, what, when, where, why, and how) that served as the basis for the visa denial, the government did not satisfy the bona-fide-reason prong. *See* Appellant's Br. at 15–16.

As far as we can tell, none of our sister circuits have held after *Din* that a consular official must always identify the on-the-ground facts on which a visa denial is based. Instead, a citation to a statutory inadmissibility provision meets both prongs of the standard where the provision "specifies discrete factual predicates the consular officer must find to exist before denying a visa." *Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment). *See also Yafai*, 912 F.3d at 1021 ("When a statute specifies discrete factual predicates that the consular officer must find to exist before denying a visa, the citation of the statutory predicates is itself sufficient.") (internal quotation marks omitted); *Cardenas*, 826 F.3d at 1172 (explaining that, to meet the second prong, the consular official must "cite an admissibility statute that specifies discrete factual predicates the consular officer must find to exist before denying a visa *or* there must be a fact in the record that provides at least a facial connection to the statutory ground of inadmissibility") (emphasis added and internal quotation marks omitted). Where a statute provides specific factual predicates that the consular official must find for a determination of inadmissibility, a citation to the statute "indicates [that the government] relied upon a bona fide factual basis for denying a visa." *Din*, 576 U.S. at 105 (Kennedy, J.,

concurring in the judgment).

"When an opinion issues for the [Supreme] Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996). Necessary to Justice Kennedy's concurrence in *Din* was the distinction between statutes that detail discrete factual predicates, like those at issue here, and statutes that do not, like the one in *Mandel. See Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment).

The government, angling for a broad ruling, argues that a mere statutory citation *always* constitutes a facially legitimate and bona fide reason. The Fourth and Sixth Circuits have used language suggesting agreement with the government's position. *See Sesay v. United States,* 984 F.3d 312, 316 (4th Cir. 2021) ("The Supreme Court has unambiguously instructed that absent some clear directive from Congress or an affirmative showing of bad faith, the government must simply provide a valid ineligibility provision as the basis for the visa denial."); *Baaghil v. Miller*, 1 F.4th 427, 432 (6th Cir. 2021) ("Even a 'statutory citation' to the pertinent restriction, without more, suffices.").

Here, each of the inadmissibility provisions cited in the notice of denial provided to Mr. Del Valle specifies discrete factual predicates that the consular official must have found to exist to deny his visa application. *See* 8 U.S.C. § 1182(a)(6)(C)(i) ("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other

documentation, or admission into the United States or other benefit provided under this chapter is inadmissible."); § 1182(a)(6)(C)(ii) ("Any alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this chapter . . . or any other Federal or State law is inadmissible."); § 1182(a)(9)(B)(i)(II) (classifying as inadmissible "[a]ny alien . . . who . . . has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States"). The denial here was not based on a provision lacking discrete factual predicates, like the one in *Mandel*. Under *Mandel* and *Din*, in this situation a statutory citation constitutes a facially legitimate and bona fide reason.[5]

---

[5] In *Trump*, the Supreme Court summarized Justice Kennedy's position in *Din* as "mean[ing] that the Government need provide only a statutory citation to explain a visa denial." *Trump*, 138 S. Ct. at 2419. But, in reviewing President Trump's self-styled "Muslim Ban," the Court applied rational basis review instead of the consular non-reviewability doctrine. *See id.* at 2420. Accordingly, the Court's discussion of the doctrine is dicta. *See United States v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) ("[D]icta is defined as those portions of an opinion that are not necessary to deciding the case then before us.") (internal quotation marks omitted). We need not decide whether to follow the *Trump* dicta about the scope of *Din*. Justice Kennedy's concurrence in *Din* expressly concludes that a statutory citation to an inadmissibility provision is sufficient if that provision specifies "discrete factual predicates," *see Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment), and that is the situation presented here.

## C

Mrs. Del Valle claims that the consular non-reviewability doctrine does not preclude the district court from reviewing in camera the evidence on which the consular official found Mr. Del Valle inadmissible. We are unpersuaded. In essence, Mrs. Del Valle is asking for a merits examination of the consular official's determination—precisely the type of review that the consular non-reviewability doctrine forecloses.

To start, Mrs. Del Valle asserts that she is not asking for substantive review of the consular official's decision, but instead only "want[s] the district court to see that there is a factual predicate." Oral Arg. Audio at 3:25–4:54. In particular, she wants that court to confirm the existence of fingerprint, photograph, and documentary evidence that tie Mr. Del Valle to acts that are encompassed by 8 U.S.C. §§ 1182(a)(6)(C)(i) & (6)(C)(ii). *See* Oral Arg. Audio at 5:42–6:16. But considering whether the pieces of evidence are "[Mr. Del Valle's] fingerprints, his photo, [and] documents relating to him," *id.* at 6:09–14, is an analysis of whether the consular official's decision was right or wrong. That, by definition, is a substantive merits review.

Mrs. Del Valle says, however, that her case is unique. In her view, had Mr. Del Valle been inadmissible under the grounds cited by the consular official (other than his undocumented stay), USCIS would have denied his provisional waiver request. *See id.* at 12:49–14:15, 36:18–52. But USCIS granted Mr. Del Valle a provisional waiver, so Mrs. Del Valle argues that we can "infer that the factual

predicate [for inadmissibility] doesn't exist." *Id.* at 13:01–07. In other words, rather than a mere lack of evidence, there are indicia that her husband did not commit fraudulent acts that would render him inadmissible under §§ 1182(a)(6)(C)(i) & (6)(C)(ii).

It is true that a person is not eligible for a provisional waiver if he is inadmissible under a provision other than § 1182(a)(9)(B)(i). *See* 8 C.F.R. § 212.7(e)(3)(iii) (establishing that a person may be eligible for a provisional waiver if "[u]pon departure, [he] would be inadmissible only under [§ 1182](a)(9)(B)(i) . . . at the time of the immigrant visa interview"). So, someone—either USCIS, as to the grant of the provisional waiver, or the consular official, as to the visa denial—likely made a mistake. But this merely shows that, at bottom, Mrs. Del Valle's argument is that the consular official (rather than USCIS) got it wrong.

Mrs. Del Valle does not allege that the consular official acted in bad faith. And absent a plausible allegation of bad faith, we cannot consider whether the consular official erred, because the reasons provided in the notice of denial are facially legitimate and bona fide. *See Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment) ("Absent an affirmative showing of bad faith on the part of the consular officer . . . *Mandel* instructs us not to look behind the Government's exclusion of [the alien] for additional factual details beyond what its express reliance on [the relevant statute] encompassed.") (internal quotation marks omitted). *See also Cardenas*, 826 F.3d at 1172 ("the plaintiff has the burden of proving that the reason was not bona fide by making an affirmative showing of

bad faith on the part of the consular officer who denied [ ] a visa")
(internal quotation marks omitted).[6]

We appreciate the possibility that it was the consular official
who bungled. But we also recognize, as Justice Frankfurter did
many years ago, that though "much could be said for the view,
were we writing on a clean slate, that the Due Process Clause qual-
ifies the scope of political discretion" in regulating immigration,
"the slate is not clean." *Galvan v. Press*, 347 U.S. 522, 530-31 (1954).
Congress has the power to require that consular officials specifi-
cally identify the facts underlying visa denials, just as it requires that
they cite to specific statutory provisions of inadmissibility. *See* 8
U.S.C. § 1182(b)(1)(B). It has not done so, and as a result Mrs. Del
Valle's claim collapses under the weight of the jurisprudential slate.

In sum, on this record the reasons for the denial of Mr. Del
Valle's visa application are legitimate and bona fide. We therefore
uphold the district court's dismissal on the ground that Mrs. Del

---

[6] Because Mrs. Del Valle does not allege bad faith, we have no occasion to
address what sort of a showing is necessary to allow more searching judicial
review of a visa denial under *Mandel* and *Din*. Whatever the standard, an al-
legation of bad faith must be "plausibly alleged with sufficient particularity."
*Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment). *See also Car-
denas,* 826 F.3d at 1173 (ruling that a consular official's question about a per-
son's tattoos was insufficient to allege bad faith because "the remark does not
plausibly establish that the decision to deny . . . a visa was made on a forbidden
racial basis, as opposed to a possibly mistaken basis about what [the] tattoos
signified"); *Yafai*, 912 F.3d at 1022 ("Making an 'affirmative showing of bad
faith' requires a plaintiff to point to something more than an unfavorable de-
cision.").

Valle failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

## V

As Mrs. Del Valle failed to state a claim upon which relief can be granted, we affirm the district court's order. On remand the district court should amend its judgment to indicate that the dismissal of Mrs. Del Valle's complaint is on the merits.

AFFIRMED AND REMANDED WITH INSTRUCTIONS.